# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTTONIO JAMELE ROLLINS,

        Defendant-Appellant.

UNPUBLISHED
September 10, 2015

No. 321488
Wayne Circuit Court
LC No. 13-010726-FC

Before: TALBOT, P.J., and WILDER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to commit murder (AWIM), MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 12½ to 25 years' imprisonment for the AWIM conviction and two years' for the felony-firearm conviction. We affirm.

This case arises out of a shooting in Detroit, Michigan, on the evening of September 7, 2012. At approximately 11:00 p.m., the victim, Robert Monroe, was working as a pizza delivery man. He received an order to deliver to the home of his step-mother's sister, Samari Blakely (the victim's aunt). After arriving at his aunt's house, the victim parked his car in the street, went to the door, and knocked. He heard a voice behind him call his nickname, "LB." The victim turned and saw a black Grand Prix parked on the street. He approached the Grand Prix. Defendant was in the front passenger seat, which was next to the curb, and had rolled down his window. The victim knew defendant, who was a distant relative, by defendant's nickname, "J Rock." The victim had seen defendant at family gatherings in the past. Although he had no problem with defendant, the victim's sisters, Autumn Blakely and Renee Monroe, had unspecified issues with defendant.[1] Two other men were in the Grand Prix with defendant—one in the driver's seat and

---

[1] When the victim testified that his sisters had issues with defendant, defense counsel objected on grounds that the testimony was speculative, irrelevant, and derived from hearsay. The trial court overruled the objection, but it instructed the victim not to testify about the nature of the issues his sisters had with defendant, instead limiting his testimony to whether the victim had personal knowledge that such issues existed.

another in the rear passenger seat. The victim approached defendant, who was still seated in the Grand Prix, and they shook hands. The victim spoke briefly with the man in the backseat.

Suddenly, while the victim was standing about three feet from the Grand Prix, gunshots were fired from the area of defendant's seat. Although he never saw a gun, the victim saw sparks from the gunshots and felt bullets strike him in the stomach and lower chest. He was shot again in the back as he fled. He was positive defendant was the person who shot him. Uncertain whether he could trust his aunt—having just been shot in front of her home—the victim went to a nearby liquor store and asked the employees to call an ambulance. The police arrived and transported to victim to the hospital, where he underwent surgery. As discussed *infra*, there was conflicting evidence about how many times the victim was shot, and whether he was actually shot in the back, but one bullet retrieved from his body was admitted into evidence at trial and the victim testified that two bullets remained inside him.

On September 16, 2014, Sergeant Terence Sims of the Detroit Police Department tried to interview the victim in the hospital, but he ordered Sergeant Sims to leave. According to the victim, he did so because he did not feel well enough to talk and had tubes running into his mouth and side. According to Sergeant Sims, the victim was in bad physical shape and became very agitated before ordering Sergeant Sims to leave. Sergeant Sims spoke with the victim's family afterwards and identified defendant as a possible suspect. A week later, Sergeant Richard Seagram came to the hospital, and the victim provided a written statement indicating that "J Rock" was the person who shot him. The victim also identified defendant in a photographic array conducted by Sergeant Seagram.

At trial, defendant elected not to testify. The parties stipulated to the admission of a police report prepared by Officer Brandolyn Johnson, who was an absent witness endorsed by the prosecution. The report was read into the record, marked as an exhibit, and admitted into evidence. In pertinent part, it stated that, at the liquor store immediately after the victim was shot, he told the police that he had been shot twice, in the upper abdomen and chest—not three times, as his trial testimony, that he was shot in the stomach, chest, and back, would indicate— by "an unknown black male driving a black Grand Prix[.]" The victim's medical records were also admitted into evidence. The medical records indicated that defendant was "brought in with three entry wounds to the abdomen."

During her closing argument, the prosecutor made several statements to which defendant takes issue on appeal. The prosecutor stated, "Now [the victim]'s honest with you and told you [he] did not have a problem with the defendant." The prosecutor further argued: "[Y]ou will get the medical records of [the victim] who almost died a couple of times. Serious injuries inside. Messed up to the point he has a colostomy bag. This is not a person who would come in here and indicate somebody else did it and let the real shooter—[.]" Defendant objected after this statement, arguing that the prosecutor was vouching for the credibility of the witness. The trial court agreed and stated, "you can't do that." Finally, the prosecutor stated:

> Now the victim is on that stand talking to you. No he is not a professional witness. He's not rehearsed. What you see is what you got [sic]. He was genuine. Even when you asked him questions [referring to written questions jurors submitted that were approved by counsel before the victim answered them,]

he turned around and looked at you and said naw, I didn't say that, whatever, whatever. Kind of slouched in the chair. He's just talking. He's telling you what happened to him, simple as that.

The trial court instructed the jury that the attorneys' arguments and statements were not evidence to be considered in deciding the case and that it was free to determine the credibility of the witnesses.

The jury convicted defendant as charged. The trial court sentenced defendant as indicated above.

In his brief on appeal, defendant first argues that insufficient evidence supported his convictions. We disagree.

We review de novo a challenge to the sufficiency of the evidence in a jury trial, "viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Defendant argues that, since the victim never saw a gun, the evidence was insufficient for the jury to find that defendant possessed a gun or used a gun to shoot the victim. While "it is well settled that identity is an element of every offense[,]" *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), defendant's argument ignores the fact that "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime[,]" *Nowack*, 462 Mich at 400 (citation and quotation marks omitted). The victim was delivering pizzas when he was called over to a parked car and shot several times. It is undisputed that he was shot—one bullet was recovered from his body and introduced into evidence at trial—and he saw sparks emanate from defendant's seat in the parked car, which supports a reasonable inference that defendant was the shooter. Though two other men were in the parked car with defendant, the victim testified that he was certain that it was defendant who shot him. Finally, the victim testified that he knew defendant, who had unspecified issues with the victim's sisters, which, contrary to defendant's assertion, supports a reasonable inference that defendant had a motive to shoot the victim. Thus, notwithstanding the fact that the victim never saw defendant with a gun, a rational trier of fact could reasonably infer that defendant possessed a gun and used it to shoot the victim. Moreover, while defendant claims that there was no proof of the specific type of gun (.38 caliber or 9mm); however, as discussed *infra*, that is not an element of either offense.

Defendant also argues that the most reasonable inference from the evidence was that the driver fired the shots. However, this Court will not replace its judgment for that of the fact-finder regarding what inferences can be fairly drawn from the evidence. *People v Kosik*, 303 Mich App 146, 150-151; 841 NW2d 906 (2013). This Court views the evidence in the light most favorable to the prosecution, *Gaines*, 306 Mich App at 296, and must draw *all* reasonable inferences in favor of the jury's verdict convicting defendant of AWIM and felony-firearm,

*Nowack*, 462 Mich at 400. Since it was reasonable for the jury to infer that defendant possessed a gun and used it to shoot the victim, no further review is necessary or appropriate.

Defendant next argues that the prosecutor's closing argument impermissibly suggested to the jury that she had special knowledge regarding the victim's credibility. We disagree.

While defense counsel objected to one of the allegedly improper statements, he did not request a curative instruction and he did not object to the other statements. Thus, his claim that those comments were improper is unpreserved, and our review is for plain error affecting defendant's substantial rights. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

> When reviewing a claim of prosecutorial misconduct, this Court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context. Further, the propriety of a prosecutor's remarks will depend upon the particular facts of each case. In addition, a prosecutor's comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. Furthermore, otherwise improper remarks by the prosecutor might not require reversal if they respond to issues raised by the defense. Although a prosecutor may not argue a fact to the jury that is not supported by evidence, a prosecutor is free to argue the evidence and any reasonable inferences that may arise from the evidence. [*People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003) (citations omitted).]

Because "[t]he goal of a defense objection to improper remarks by the prosecutor is a curative instruction[,]" appellate review of such remarks is generally precluded where the defendant failed to request a curative instruction "unless the prejudicial effect of the remark was so great that it could not have been cured by an appropriate instruction." *People v Cross*, 202 Mich App 138, 143; 508 NW2d 144 (1993); see also *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994) (noting that a defendant's failure to object to improper remarks by the prosecution deprives the trial court of an opportunity to cure the error).

Defendant claims that the three comments discussed above clearly suggested that the prosecutor had special knowledge regarding the victim's credibility, which is impermissible. See *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009) ("A prosecutor may not vouch for the credibility of [her] witnesses by suggesting that [s]he has some special knowledge of the witnesses' truthfulness."). However, defendant fails to provide any meaningful analysis regarding the propriety of the prosecution's comments—he does not explain how or why those comments suggested that the prosecutor had special knowledge of the victim's credibility. Accordingly, defendant has abandoned his argument that the comments were improper. See *People v McDonald*, 303 Mich App 424, 439; 844 NW2d 168 (2013) (concluding that the defendant's argument was abandoned because he "fail[ed] to engage in any meaningful legal analysis" in support of his argument).

In any event, the prosecution's comments were proper. Viewed in their proper context, the comments did not suggest that the prosecutor had special knowledge of the victim's credibility. The various comments summarized the victim's testimony and argued that he should

be believed based on the facts of the case, which is permissible. *Seals*, 285 Mich App at 22 (stating that it is proper for a prosecutor to "argue from the facts that a witness should be believed" (citation and quotation marks omitted)). Likewise, the comments were proper because they were made during closing arguments about a prosecution witness whose credibility was vitally important to determining guilt or innocence—his testimony was the only evidence that defendant was the shooter. *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004) ("[A] prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes.").

Finally, even if the comments defendant cites did improperly suggest that the prosecutor had special knowledge regarding the victim's credibility, reversal is nevertheless unwarranted. The trial court properly instructed the jury that counsel's arguments and statements were not evidence to be considered in deciding the case, and also properly instructed the jury that it was free to determine the credibility of the witnesses, thereby remedying any prejudice defendant might have suffered. See *People v Unger (On Remand)*, 278 Mich App 210, 235; 749 NW2d 272 (2008) (explaining that "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements," and "jurors are presumed to follow their instructions"); *Callon*, 256 Mich App at 330-331 (holding that "the trial court's instructions dispelled any prejudice arising from the prosecutor's comment").

In his Standard 4 brief, defendant contends that the assistant prosecutor committed misconduct by intentionally soliciting perjured testimony and using it to support defendant's convictions. We disagree.

Since defendant did not contemporaneously object to the allegedly perjured testimony and request a curative instruction regarding such testimony, our review is for plain error affecting defendant's substantial rights. *Bennett*, 290 Mich App at 475. It is well-settled that the prosecution's knowing use of perjured testimony to secure a conviction violates the defendant's rights to a fair trial and due process, *People v Aceval (On Remand)*, 282 Mich App 379, 389; 764 NW2d 285 (2009), and "a prosecutor has an obligation to correct perjured testimony that relates to the facts of the case or a witness's credibility," *People v Gratsch*, 299 Mich App 604, 619; 831 NW2d 462 (2013), vacated in part on other grounds by 495 Mich 876 (2013).

Defendant contends that the prosecutor should have known that the victim lied when he said defendant shot him in the back because such testimony was inconsistent with the victim's medical records.[2] But whether the prosecution *should have known* that the victim's testimony was inconsistent with medical records is irrelevant. Instead, the germane question is whether the prosecution *did* know the victim would perjure himself but nevertheless elicited his perjured testimony and failed to correct it. See *Gratsch*, 299 Mich App at 619; *People v Herndon*, 246

---

[2] To the extent that defendant also suggests that the victim committed perjury when he testified that he still had two bullets inside of him and was still required to wear a colostomy bag, defendant has abandoned this argument by failing to engage in a meaningful legal analysis in support of his argument. See *McDonald*, 303 Mich App at 439.

Mich App 371, 417; 633 NW2d 376 (2001) ("We have no reason to conclude that [a prosecution witness] testified falsely. More importantly, there is no indication in the record that, even if [the witness] testified falsely, the prosecutor knew he would testify falsely."). Other than a few inconsistent portions of the victim's medical records, defendant cites no evidence that the prosecutor (1) knew the victim would perjure himself or (2) knew the victim's testimony that he was shot in the back was false. On the contrary, the prosecutor had no clear reason to disbelieve the victim's description of his injuries or to closely review his medical records for inconsistencies, particularly when it was undisputed that the victim had, indeed, been shot. The question at trial was whether defendant was the shooter, not whether or where the victim was shot.

Under the plain error rule, defendant bears the burden of proving that the prosecution's conduct constituted plain error that prejudiced him by affecting the outcome of his trial. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Even assuming that the victim perjured himself, defendant has failed to carry his burden of proof. The prosecutor voluntarily produced the victim's medical records at trial, which were admitted into evidence. By doing so, the prosecution arguably corrected any discrepancy between the medical records and the victim's conflicting testimony. Indeed, if the prosecutor *knowingly* elicited perjured testimony from the victim, as defendant contends, it would have been illogical for her to later admit medical records tending to discredit the perjured testimony and impeach her own witness.

Likewise, since the victim's allegedly perjurious testimony was unnecessary to sustain his convictions, defendant has failed to explain how he was prejudiced by the allegedly perjurious testimony. There are three essential elements for AWIM: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014) (citation and quotation marks omitted). A defendant "is guilty of felony-firearm if the [defendant] possesses a firearm during the commission of a felony." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011), citing MCL 750.227b. Aside from his testimony that he was shot in the back, the victim also testified that defendant called him over to a parked car and, without warning, shot him in the stomach and the chest from the point-blank range of three feet. Such conduct plainly constitutes AWIM; it was an assault, with evident intent to kill, which would have been murder if the victim had died. Additionally, by using a firearm to commit AWIM, which is a felony, MCL 750.83, defendant was guilty of felony-firearm.

Defendant argues that the victim's testimony that he was shot in the back led the jury to improperly conclude beyond a reasonable doubt that it was the passenger, not the driver, who committed the assault. However, rather than confusion about who the shooter was based on that person's position in the car, as discussed above, the evidence permitted the jury to reasonably conclude that defendant was the shooter based on the victim's testimony the he was certain that defendant shot him and the evidence regarding defendant's motive. Thus, defendant has failed to demonstrate that the prosecutor committed misconduct by intentionally soliciting perjured testimony, and he has failed to show how such testimony prejudiced him even if it was false.

Finally, in both his brief on appeal and his Standard 4 brief, defendant argues that his trial counsel performed ineffectively by failing to object to the alleged misconduct of the prosecutor. We disagree.

Defendant failed to properly preserve this issue by moving for a new trial or a *Ginther*[3] hearing in the trial court. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Since no *Ginther* hearing occurred, review of defendant's claims of ineffective assistance of counsel is limited to error apparent on the record. *People v Buie (On Remand)*, 298 Mich App 50, 60-61; 825 NW2d 361 (2012). "The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

When reviewing a claim of ineffective assistance of counsel, there is a strong presumption in favor of the adequacy of counsel and "the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). To assert a valid claim of ineffective assistance, "a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms[,] (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different," and (3) the ultimate result was "fundamentally unfair or unreliable." *Id.*

As discussed above, defendant has failed to show that the prosecution committed any misconduct. Accordingly, he cannot demonstrate that his counsel should have objected to the alleged instances of prosecutorial misconduct, or that he was prejudiced by counsel's failure to object. Thus, defendant's claim that counsel performed ineffectively by failing to object to prosecutorial misconduct necessarily fails. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Affirmed.


/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Karen M. Fort Hood

---

[3] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).