PEOPLE v McDONALD

Docket No. 311412. Submitted December 3, 2013, at Lansing. Decided December 17, 2013, at 9:05 a.m. Leave to appeal sought.

Gerald D. McDonald was convicted by a jury in the Calhoun Circuit Court of first-degree home invasion, armed robbery, carrying a concealed weapon, felon in possession of a firearm, three counts of possession of a firearm during the commission of a felony, and five counts of resisting arrest. The court, James C. Kingsley, J., sentenced defendant as a fourth-offense habitual offender to 25 to 50 years' imprisonment for the home invasion conviction, 40 to 60 years' imprisonment for the armed robbery conviction, 6 to 15 years' imprisonment for the concealed weapon and felon-in-possession convictions, 2 years' imprisonment for each of the felony-firearm convictions, and 3¹/₂ to 15 years' imprisonment for each of the resisting arrest convictions. Defendant appealed.

The Court of Appeals *held*:

1. MRE 609 governs the admission of evidence of prior convictions for impeachment purposes. A defendant, however, must testify in order to preserve for review the issue of improper impeachment by prior convictions. The failure to testify and preserve the issue results in waiver of any review of the issue given that meaningful appellate review cannot be undertaken unless a defendant actually takes the stand and testifies and the evidence of a prior conviction is admitted. Further, the plain-error test announced in *People v Carines*, 460 Mich 750 (1999), is inapplicable because that test is only applied when an error exists, and a defendant's decision not to testify prevents the appellate court from being able to determine whether the trial court's ruling was erroneous. In this case, the trial court ruled that if defendant were to testify, the prosecution could impeach him with a prior first-degree home invasion conviction. Defendant waived review of the trial court's decision by choosing not to testify.

2. A trial court is not compelled to provide funds for the appointment of an expert on demand. An indigent defendant must show that there exists a nexus between the facts in the case and the need for an expert witness. Without an indication that expert testimony would likely benefit the defense, a trial court does not

abuse its discretion by denying a defendant's motion for appointment of an expert witness. In this case, the trial court denied defendant's motion for funds to cover the fees of his DNA expert that would have been incurred for her time testifying as a witness in court and traveling to and from court. Defendant asserted that his expert would testify that there was a major DNA donor on a gun, which was identified by the victim as having been used during the crime and that was later found near the spot where defendant was arrested, and that the major donor was not defendant. In denying the motion, the court noted that the prosecution's expert witness had already testified that her DNA testing was inconclusive. Under the facts of the case, the trial court did not abuse its discretion by denying the motion because the testimony of defendant's proposed expert would not have been sufficiently beneficial to defendant given that the prosecution's expert witness could not establish a DNA link between defendant and the gun, and defendant's proposed exert witness could not altogether exclude him as having a DNA link to the gun.

3. The danger in revealing a defendant's parolee status is that a jury will recognize that the defendant has previously been convicted of a crime. In this case, defendant could not establish plain error affecting his substantial rights stemming from references during trial to his parolee status because the jury already knew that defendant was a felon because he was charged with felon in possession of a firearm. Therefore, defendant could not establish prejudice.

4. Under MRE 614(b), the court may interrogate witnesses. The interrogation, however, may not pierce the veil of judicial impartiality. In this case, the trial court permissibly questioned witnesses in order to clarify testimony or elicit additional relevant information. At no point did the court pierce the veil of judicial impartiality.

5. Voluntarily given confessions that are not the result of impermissible custodial interrogations are admissible under *Miranda v Arizona*, 384 US 436 (1966). With respect to whether statements or questions posed by police officers to a defendant constitute interrogation, the dispositive question is whether the suspect's incriminating response was the product of words or actions on the part of the officers that they should have known were reasonably likely to elicit an incriminating response. In this case, the trial court permitted an officer to testify that, while defendant was being transported to jail, defendant admitted that he had touched the gun with his elbow while wrestling with the officers. The statement came after the officer asked defendant if he

would be willing to submit a DNA sample. Defendant's statement, which came after a period of silence, was essentially volunteered and followed a question of the type that is normally attendant to arrest and custody. Thus, the question was not interrogational and reversal was not warranted.

Affirmed.

CRIMINAL LAW — IMPEACHMENT — EVIDENCE OF PRIOR CONVICTIONS — APPEAL — PRESERVATION OF ISSUE.

A defendant must testify at trial in order to preserve for appellate review a challenge to a trial court's ruling in limine allowing the impeachment of the defendant with a prior conviction; the failure to testify and preserve the issue results in waiver of any review of the issue and the plain-error test is inapplicable.

*Bill Schuette*, Attorney General, *Aaron Lindstrom*, Solicitor General, *David E. Gilbert*, Prosecuting Attorney, and *Brandon S. Hutlink*, Assistant Prosecuting Attorney, for the people.

*Daniel D. Bremer* for defendant.

Before: MURPHY, C.J., and FITZGERALD and BORRELLO, JJ.

MURPHY, C.J. A jury convicted defendant of first-degree home invasion, MCL 750.110a(2), armed robbery, MCL 750.529, carrying a concealed weapon, MCL 750.227, felon in possession of a firearm, MCL 750.224f, three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and five counts of resisting arrest, MCL 750.81d. He was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 25 to 50 years' imprisonment for the home invasion conviction, 40 to 60 years' imprisonment for the armed robbery conviction, 6 to 15 years' imprisonment for the concealed weapon and felon-in-possession convictions, 2 years' imprisonment for each of the felony-firearm convictions, and 3½ to 15 years'

imprisonment for each of the resisting arrest convictions. The felony-firearm sentences are to be served concurrently to each other but consecutively to and preceding the sentences for all of the other convictions, with those remaining sentences being served concurrently to each other. Defendant appeals as of right, and we affirm.

## I. FACTS

Sometime between 4:30 and 4:45 a.m. on November 2, 2011, the victim walked into her dining room and saw defendant pointing a silver handgun at her. Defendant demanded money, and the victim responded that she did not have any cash. After several minutes, defendant walked through the kitchen and left the victim's home through a back door. Thereafter, the victim realized that her purse, which had been in the kitchen, was missing. The police were contacted, and the victim provided them with a description of the perpetrator. Defendant was located outside an apartment building two blocks away from the victim's home. Two officers approached defendant and attempted to detain him. Defendant resisted, and it took five uniformed officers to subdue him. After defendant was arrested, a silver handgun was found on the ground near where the struggle between defendant and the officers took place. The victim's purse was located in one of the apartment building's window wells. Defendant provided various false names to the police. The victim identified defendant less than one hour after she saw him in her home, and she stated that she was 99 percent sure that defendant was the perpetrator. The victim identified defendant for a second time in a lineup on November 16, 2011, specifically stating that she recognized defen-

dant's eyes and ears. Defendant was identified by the victim as her assailant for a third time at trial.

At trial, defendant disputed that he was the perpetrator and that the gun found by police belonged to him. Defendant's supposed girlfriend testified that defendant, along with others, lived with her in November 2011 in the apartment building outside of which the police located the gun, purse, and defendant shortly after the criminal episode.[1] She further testified that defendant had been smoking methamphetamines with her in their apartment beginning on the evening of November 1 and running through the morning of November 2, 2011. According to the girlfriend, defendant went outside for the first time that morning only minutes before he was arrested by police. The jury convicted defendant of the charged crimes.

## II. ANALYSIS

### A. DEFENDANT'S RIGHT TO TESTIFY AND PRESENT A DEFENSE AND PROSPECTIVE IMPEACHMENT WITH A PRIOR CONVICTION

Defendant first argues on appeal that the trial court improperly ruled that, in the event defendant testified on his own behalf, a prior first-degree home invasion conviction would be admissible pursuant to MRE 609, which sets forth rules governing the admission of prior convictions for impeachment purposes. Defendant contends that he did not take the stand as a result of the trial court's ruling, which was in error, thereby unlawfully depriving him of an opportunity to present a defense by way of his own testimony. We hold that,

---

[1] The "girlfriend" testified that she and defendant were in a dating relationship at the time of the crime; however, a police officer testified that defendant provided the name of his girlfriend after being arrested and it was not the same name of the female witness claiming to be defendant's girlfriend at trial.

under *People v Finley*, 431 Mich 506; 431 NW2d 19 (1988), and *People v Boyd*, 470 Mich 363; 682 NW2d 459 (2004), defendant waived this argument for appellate review given his failure to actually testify on his own behalf; the plain-error test is not applicable. Generally speaking, a defendant who waives a right under a rule cannot then seek appellate review of a claimed deprivation of that right. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

In *Finley*, our Supreme Court held "that a defendant must testify in order to preserve for review the issue of improper impeachment by prior convictions," adopting the rule established by the United States Supreme Court in *Luce v United States*, 469 US 38; 105 S Ct 460; 83 L Ed 2d 443 (1984). *Finley*, 431 Mich at 521 (opinion by RILEY, C.J.).[2] The lead opinion in *Finley* indicated that the failure to testify and preserve the issue results in a waiver of any review of the issue. *Id.* at 526. The lead opinion explained, and ultimately agreed with, the reasoning and rationale behind the *Luce* rule:

> The purpose of the *Luce* rule is to provide a mechanism for meaningful appellate review of the impeachment decision. In fact, the straightforward logic of *Luce* not grasped by either dissent is that as to evidentiary rulings, error does not occur until error occurs; that is, until the evidence is admitted. Obviously, in other contexts, if an offer of proof is made and the court erroneously permits the introduction of hearsay, character evidence, similar acts, or the myriad of evidence objectionable under the MRE, there is no error requiring reversal unless the evidence actually is introduced. Unless the defendant actually testifies, a number of questions remain open to speculation:

---

[2] The lead opinion in *Finley*, which was joined by Justices BOYLE and GRIFFIN, was authored by Chief Justice RILEY. Justice BRICKLEY authored a partial concurrence that agreed with the adoption of the rule announced in *Luce*. *Finley*, 431 Mich at 526 (BRICKLEY, J., concurring in part).

> Any possible harm flowing from a district court's in limine ruling permitting impeachment by a prior conviction is wholly speculative. The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling. On a record such as here, it would be a matter of conjecture whether the District Court would have allowed the Government to attack petitioner's credibility at trial by means of the prior conviction. [*Luce, supra* at 41-42.]

The *Luce* Court also noted that the prosecutor may not have attempted to impeach the defendant with the prior conviction. Where the case against the defendant is strong, or other avenues of impeachment are available, it is possible that the defendant's prior record would not have been used. *Luce, supra* at 42.

In addition, a defendant's decision not to testify generally is based on many factors, no one of which is determinative. A reviewing court cannot assume that the defendant decided not to testify out of fear of impeachment by a prior conviction. *Id.* The Court rejected the suggestion that a defendant may state an intention to testify if the court grants the motion in limine because such a commitment is difficult to enforce. *Id.*

In the event that the trial judge incorrectly allows impeachment by prior conviction, the *Luce* rule enhances review of the harmless error issue:

> Were in limine rulings under Rule 609(a) reviewable on appeal, almost any error would result in the windfall of automatic reversal; the appellate court could not logically term "harmless" an error that presumptively kept the defendant from testifying. Requiring that a defendant testify in order to preserve Rule 609(a) claims will enable the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a

whole; it will also tend to discourage making such motions solely to "plant" reversible error in the event of conviction. [*Luce, supra* at 42.] [*Finley*, 431 Mich at 512-513 (opinion by RILEY, C.J.) (citations of *Luce* in original).]

The main points emanating from the lead opinion in *Finley* are that (1) there can be no error until a defendant testifies and the prior-conviction impeachment evidence is actually introduced, (2) absent application of the *Luce* rule, appellate review relative to issues of harm and prejudice is burdened by the need to resort to speculation, and (3) in a similar vein, the analysis necessary to determine admissibility under the rules of evidence is made inherently difficult, if not impossible, given the absence of a factual context.[3] In sum, meaningful appellate review cannot be undertaken unless a defendant actually takes the stand and testifies and the evidence of a prior conviction is admitted.

The language in *Finley* regarding preservation and the failure to preserve might suggest the possibility of applying the plain-error test, but that is not the correct analysis. In *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), the Supreme Court outlined the plain-error test:

To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement

---

[3] We note that Justice BRICKLEY did not agree with the lead opinion's assessment that there can be no error until evidence is admitted, stating that "the notion that reviewable error does not occur until admission of the challenged evidence does not square with actual practice." *Finley*, 431 Mich at 531 (BRICKLEY, J., concurring in part). Regardless, as discussed later in this opinion, the subsequent decision in *Boyd*, 470 Mich 363, applied the ruling and reasoning employed by the lead opinion in *Finley*.

generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." [Citations and quotation marks omitted; alteration in original.]

*Finley* does not support application of the plain-error test in a situation in which a trial court prospectively rules that a prior conviction will be admitted should a defendant take the stand, the defendant does not take the stand—ostensibly because of the court's evidentiary ruling—and the defendant proceeds to appeal the trial court's evidentiary ruling. Under those circumstances, *Finley* does not support employing the plain-error test because (1) *Finley* ultimately stated that the issue is waived, (2) *Finley* did not apply the plain-error analysis, and (3) *Finley* made clear that identifying error and determining harm and prejudice, which are part of the plain-error test, are effectively rendered impossible given the need for speculation.

In *Boyd*, our Supreme Court extended the rule from *Luce* and *Finley*. *Boyd*, 470 Mich at 365. The Court held that the defendant "was required to testify to preserve for review his challenge to the trial court's ruling in limine allowing the prosecutor to admit evidence of defendant's exercise of his *Miranda*[4] right to remain silent." *Id.* The *Boyd* Court observed:

---

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Because the admissibility of post-*Miranda* silence depends on the factual setting in which the prosecutor seeks to admit it, we are faced with the same problem encountered in *Luce* and *Finley*, i.e., that defendant's claim of error is wholly speculative. Not only could the statement have been admitted to contradict a defendant who testified about an exculpatory version of events and claims to have told the police that version upon his arrest, but, as *Luce* suggests, it might not have been admitted at all, even if defendant had testified. As the *Luce* Court recognized, the trial court could have ultimately concluded that the statement was inadmissible, or the prosecution could have changed its trial strategy and not sought to admit the statement.

\* \* \*

. . . Thus, to preserve for appellate review a challenge to a trial court's ruling in limine allowing into evidence a defendant's exercise of his Fifth Amendment privilege, the defendant must testify at trial. Because the statement at issue in this case would have been properly admissible in one context, it is impossible to determine whether the trial court's ruling was erroneous. Accordingly, we are *unable to review* defendant's allegation of error. [*Boyd*, 470 Mich at 376-378 (emphasis added).]

The *Boyd* Court, acknowledging the plain-error test and expressly ruling against its application, stated:

Although we review claims of error under the standard announced in *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), that standard applies only when an error exists. Because defendant's decision not to testify prevents us from being able to determine whether the trial court's ruling was erroneous, the *Carines* plain error standard is inapplicable. [*Boyd*, 470 Mich at 378 n 11.]

Accordingly, in the case at bar, defendant waived his right to appellate review and the plain-error test is not applicable. Therefore, defendant's claim of error is rejected.

### B. COURT FUNDING FOR DNA EXPERT

Defendant next argues that the trial court abused its discretion by denying his motion for funds to cover the fees of his deoxyribonucleic acid (DNA) expert that would be incurred for her time testifying as a witness in court and traveling to and from court.[5] DNA swabs had been taken from the gun and defendant for testing. The trial court had previously authorized the payment of $500 so that defense counsel could consult with the DNA expert, but the court refused to authorize any additional monies, noting that the prosecution's DNA expert had already opined in court that her DNA testing was inconclusive. "This Court reviews for abuse of discretion a trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert witness." *People v Carnicom*, 272 Mich App 614, 616; 727 NW2d 399 (2006), citing MCL 775.15. A court abuses its discretion when a decision by the court results in an outcome that falls outside the range of reasonable and principled outcomes. *Carnicom*, 272 Mich App at 616-617. "A trial court is not compelled to provide funds for the appointment of an expert on demand." *Id.* at 617. An indigent defendant must show that there exists a nexus between the facts in the case and the need for an expert witness. *Id.* A defendant has the burden of demonstrating " 'that there is a material witness in his favor within the jurisdiction of the court, without whose testimony he cannot safely proceed to trial . . . .' " *Id.*, quoting MCL 775.15. "It is not enough for the defendant to show a mere possibility of assistance from the requested expert. Without an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a

---

[5] The trial court indicated that the expert's fee was $250 an hour.

defendant's motion for appointment of an expert witness." *Carnicom*, 272 Mich App at 617 (citation omitted).

Defendant asserted at trial that his DNA expert was prepared to testify that there was a "major" DNA donor relative to the gun and that this major donor was not defendant. Defense counsel did not proffer any supporting documentation from his DNA expert. The prosecution's DNA expert testified that the DNA evidence was "inconclusive" with respect to whether defendant had touched the gun. The expert explained that she could neither include nor exclude defendant as a DNA donor. The prosecution's expert further testified that there were, at minimum, three different DNA donors. She additionally indicated, "There's not what I would call out a major donor."

Giving defendant the benefit of assuming the accuracy of his claims at trial absent any supporting proof such as an affidavit,[6] the record does not reflect that the testimony of defendant's DNA expert would have likely benefited the defense. First, the prosecution's own expert could not establish a DNA link between defendant and the gun. And it is worth noting that defendant asserted that his expert could only exclude defendant as the major donor in connection with the DNA found on the gun, thereby indicating that his own expert could not altogether exclude him as a donor. Additionally, the prosecution's expert provided evidentiary ammunition favorable to defendant by stating that there were at least three DNA donors. Under these circumstances, we

---

[6] We recognize that an offer of proof in the form of testimony placed on a separate record was not possible, considering that the whole point of defendant's request in the first place was to procure funds to pay for the DNA expert's charges with respect to coming to and testifying at the trial.

cannot conclude that the trial court's ruling constituted an abuse of discretion. Moreover, assuming an error, we cannot conclude that the presumed error was prejudicial to defendant, given the questionable beneficial impact of the expert's prospective testimony and considering the overwhelming direct and circumstantial evidence of guilt. See MCL 769.26 (statutory harmless-error rule); *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). The trial court's ruling, assuming it was flawed, did not result in a miscarriage of justice, nor did it undermine the jury's verdict. See MCL 769.26; *Lukity*, 460 Mich at 495. Reversal is unwarranted.

### C. DEFENDANT'S PAROLEE STATUS

Defendant next argues that "repeated" references to his parolee status during trial amounted to improper character evidence. With respect to this unpreserved claim of error, defendant simply cannot establish plain error affecting his substantial rights, let alone that he is actually innocent or that any error seriously affected the integrity, public reputation, or fairness of the judicial proceedings independent of his innocence. See *Carines*, 460 Mich at 763. The jury knew that defendant had a prior felony conviction because he was charged with felon in possession of a firearm and because the parties stipulated that defendant had a prior felony conviction. The danger in revealing a defendant's parolee status is that a jury will recognize that the defendant had previously been convicted of a crime, but that was already known here, so the requisite prejudice allegedly stemming from the parole references has not been shown. The trial court also cautioned the jurors not to consider the stipulation and defendant's status as a felon for any purpose other than establishment of the

"felon" element for felon in possession. Jurors are presumed to follow a trial court's instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Reversal is unwarranted.

### D. STANDARD 4 ARGUMENTS

In a brief submitted by defendant pursuant to Standard 4 of Administrative Order No. 2004-6, 471 Mich cii, he raises a number of arguments, none of which have merit. Defendant first contends that he was deprived of a neutral, unbiased, and detached decision-maker, asserting that the trial court questioned the victim and other witnesses during the trial in a manner favorable to the prosecution. Under MRE 614(b), "[t]he court may interrogate witnesses, whether called by itself or by a party." But the trial court's examination of witnesses may not "pierce the veil of judicial impartiality," *People v Davis*, 216 Mich App 47, 50; 549 NW2d 1 (1996), because a defendant in a criminal trial has a right to a neutral and detached judge, *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996). On review of the challenged inquiries made by the trial court, it is evident that the court was permissibly "question[ing] witnesses in order to clarify testimony or elicit additional relevant information." *People v Conyers*, 194 Mich App 395, 404; 487 NW2d 787 (1992). At no point did the trial court pierce the veil of judicial impartiality.

Defendant next argues that the trial court erred by permitting an officer to testify about a statement that defendant made after he was arrested and was in the process of being transported to jail. Defendant maintains that the statement was obtained in violation of his *Miranda* rights. The officer had asked defendant if he would be willing to submit a DNA sample. And in

response to a question from defendant as to why a DNA sample was being requested, the officer explained that it would be used to determine if defendant's DNA was on the gun. Defendant then agreed to submit a DNA sample. According to the officer, after three or four minutes passed, defendant admitted that he had touched the gun with his elbow while "wrestling" with the officers.

"[V]oluntarily given confessions that are not the result of impermissible *custodial interrogations* [are] admissible" under *Miranda*. *People v White*, 493 Mich 187, 194; 828 NW2d 329 (2013) (emphasis added). There is no dispute that defendant was in custody when he acknowledged touching the gun; however, the statement was not the result of an interrogation. With respect to whether statements or questions posed by police to a defendant constitute an interrogation, "the dispositive question is whether the 'suspect's incriminating response was the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response.' " *Id.* at 208, quoting *Rhode Island v Innis*, 446 US 291, 303; 100 S Ct 1682; 64 L Ed 2d 297 (1980). In this case, the officer's request for a DNA sample and his explanation in regard to why a DNA sample was being requested—which the officer provided only because of defendant's inquiry—were not words that the officer knew or should have known were reasonably likely to elicit the somewhat incriminating response given by defendant. Indeed, defendant's statement, which came after a period of silence with no commentary by the officer, was essentially volunteered by defendant. And statements that are entirely volunteered, lacking any compelling influences, are not constitutionally barred from admission into evidence. *Innis*, 446 US at 299-300. Further, the DNA question posed by the officer can also

be viewed as the type of question " 'normally attendant to arrest and custody' " and thus not interrogational. *South Dakota v Neville*, 459 US 553, 564 n 15; 103 S Ct 916; 74 L Ed 2d 748 (1983), quoting *Innis*, 446 US at 301. Reversal is unwarranted.

Finally, defendant argues that the trial court erred by allowing an officer to testify regarding a statement made by a person in the apartment unit in which defendant was allegedly residing at the time of the crime. The officer simply indicated in cursory, vague terms that the individual provided a statement that was inconsistent with defendant's story relative to where defendant was living. Defendant asserts that this testimony concerned hearsay and that its admission violated the Confrontation Clause. Defendant, however, fails to engage in any meaningful legal analysis regarding hearsay and the Confrontation Clause; therefore, we deem the argument abandoned. See *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Moreover, assuming error, given the quantum of evidence establishing guilt, any error was harmless beyond a reasonable doubt. See *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005).

### III. CONCLUSION

By choosing not to testify defendant waived his argument that the trial court erred when it ruled that a prior conviction would be admissible for impeachment purposes should he take the stand and testify. The plain-error test is inapplicable. Further, the trial court did not abuse its discretion by denying defendant's request for funds to pay for defendant's DNA expert to testify at trial, considering that the testimony, as outlined by defendant, would not be sufficiently beneficial and the prosecution's DNA expert had already provided

testimony somewhat favorable to defendant. Moreover, any presumed error was harmless, because there was an overwhelming amount of direct and circumstantial evidence establishing defendant's guilt. Next, defendant is unable to show the requisite prejudice flowing from references to his status as a parolee, because the jury was already fully aware, and properly so, that defendant was a convicted felon. Additionally, the trial court did not pierce the veil of impartiality in questioning witnesses, given that the questions properly sought to clarify testimony or elicit additional relevant information without showing favoritism to the prosecution. Further, defendant's *Miranda* rights were not violated, considering that the statement at issue was not the result of police interrogation. Finally, defendant fails to adequately brief his claim that the admission of hearsay violated the Confrontation Clause relative to police testimony concerning an interview of an individual who lived in an apartment, supposedly shared with defendant. And, regardless, assuming any error, it was harmless beyond a reasonable doubt in light of the strong evidence of defendant's guilt.

Affirmed.

FITZGERALD and BORRELLO, JJ., concurred with MURPHY, C.J.