# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

SHANNEN RAYMON-RICCEL ROBERSON,

      Defendant-Appellant.

UNPUBLISHED
December 12, 2017

No. 333786
Wayne Circuit Court
LC No. 16-001708-FC

Before: JANSEN, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions on four counts of first-degree criminal sexual conduct (CSC), MCL 750.520b, kidnapping, MCL 750.349, and armed robbery, MCL 750.529. We affirm.

Defendant was convicted of confining the victim in his motel room on December 27, 2015, and then repeatedly sexually assaulting her and robbing her of her money and cell phone. Defendant confessed to committing these acts in a postpolygraph interview.[1]

## I. DEFENDANT'S BRIEF ON APPEAL

## A. MOTION TO SUPPRESS

Defendant first argues that the trial court erred by denying his motion to suppress his statements made during his postpolygraph interview. We disagree.

The trial court denied defendant's motion to suppress after conducting a *Walker*[2] hearing. Defendant argued below that his postpolygraph statements were involuntary because he was under the influence of multiple seizure medications at the time of his interview; thus, this issue is preserved. See *People v McCrady*, 244 Mich App 27, 29; 624 NW2d 761 (2000). However,

---

[1] Neither the fact that defendant was given a polygraph examination, nor the results of that examination, were disclosed to the jury at trial.

[2] *People v Walker (On Rehearing)*, 374 Mich 331, 338; 132 NW2d 87 (1965).

defendant's additional appellate claim that the statements were not voluntary because Detective Michael McNamara did not rewarn him of his *Miranda*[3] rights before the postpolygraph interview was not raised below; thus, that issue is not preserved. See *id*.

In *People v Mahdi*, 317 Mich App 446; 894 NW2d 732 (2016), this Court stated:

> We review de novo a trial court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation. We review for clear error any findings of fact made during the suppression hearing. A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made. [*Id*. at 457 (quotation marks and citations omitted).]

"[W]e review unpreserved constitutional issues for plain error affecting defendant's substantial rights." *People v Henry (After Remand)*, 305 Mich App 127, 160; 854 NW2d 114 (2014).

Defendant argues that his statements were involuntary because he was not rewarned of his *Miranda* rights after the polygraph examination. In *People v Ray*, 431 Mich 260, 276; 430 NW2d 626 (1988), our Supreme Court held that the admissibility of statements made during a postpolygraph interview in which the defendant was not rewarned of his constitutional rights is to be resolved by reviewing the totality of the circumstances to determine whether the waiver was knowing and voluntary. The Court stated:

> In this case, the only circumstance intervening between the preexamination rights and postexamination questioning which was alleged to be of moment was the two-hour time period that encompassed the preinterview conversation, the test itself and the postexamination interview. In addition, the same person who had warned defendant of his rights the first time, and who conducted the polygraph examination, also conducted the postexamination questioning. Therefore . . . it was not reasonable to expect a rewarning of those rights at that time. Finally, and most importantly, the defendant's waiver expressly extended to a postexamination interview. [*Id*. at 276-277 (citations omitted).]

The Court also found relevant the fact that the defendant was accompanied by counsel at the interview and there was no misconception regarding what would be admitted at trial. *Id*. at 277-278.

Similarly, in this case, the only intervening circumstance between the preexamination rights and the postpolygraph interview was the preinterview conversation, which included obtaining background information and developing questions, and the examination itself. As in *Ray*, the same person who informed defendant of his rights also conducted the polygraph examination and conducted the postpolygraph interview. Finally, the polygraph waiver form

---

[3] *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

-2-

signed by defendant expressly extended to the postpolygraph interview. Defendant claims that the waiver form was misleading because the only reference to postpolygraph questioning was in the "acknowledgment" section of the form. Defendant, however, signed his initials acknowledging that he understood that anything he said "during the testing phase and questioning, before and after," could be used against him in a court of law. There is no indication whether trial counsel was present at the polygraph examination, but defendant does not argue that he was not allowed to confer with counsel. Nor does defendant argue that there was any misconception regarding what would be admitted at trial. Because the totality of the circumstances indicate that defendant's waiver was knowing and voluntary, there was no plain error.

Defendant also argues that his statements were involuntary because he was under the influence of multiple seizure medications. "Intoxication from drugs or alcohol may preclude an effective waiver of *Miranda* rights, but is not dispositive of the issue of voluntariness." *People v Akins*, 259 Mich App 545, 566 n 18; 675 NW2d 863 (2003). Defendant argues that the trial court should have considered the side effects of his seizure medications, and he attaches to his brief on appeal a document listing the side effects of each drug. Although the document was attached to his motion to suppress, it was not admitted at the *Walker* hearing. Even if the document is considered, however, there is no evidence that defendant actually suffered from any of the *possible* side effects of the medications. At the *Walker* hearing, McNamara testified that, before the polygraph examination, defendant stated that his physical condition was good and he never indicated that he was not feeling well. Defendant did not display any signs of mental confusion and he gave appropriate responses. Further, at the *Walker* hearing, defendant admitted that when he was informed of his rights, he understood what was going on and he understood his rights. Accordingly, the trial court did not clearly err in finding that defendant's statements were knowingly and voluntarily made, and thus it did not err by denying defendant's motion to suppress.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that trial counsel was ineffective for failing to make an adequate record at the *Walker* hearing. Because defendant failed to raise this claim of ineffective assistance of counsel in a motion for a new trial or request for an evidentiary hearing in the trial court, our review is limited to mistakes apparent on the record. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). As explained in *Heft*:

> A criminal defendant has the fundamental right to effective assistance of counsel. However, it is the defendant's burden to prove that counsel did not provide effective assistance. To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant. The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. [*Id.* at 80-81 (footnoted citations omitted).]

Defendant complains that trial counsel failed to establish a foundation for arguing that defendant's statements should have been suppressed on the basis of McNamara's failure to rewarn defendant of his *Miranda* rights before the postpolygraph interview and because of his mental and physical condition at the time of the polygraph examination. Defendant is correct that a foundation for these arguments was not established at the *Walker* hearing. Moreover, as noted earlier, at the suppression hearing, counsel failed to seek admission of the document listing the possible side effects of defendant's seizure medications. Nonetheless, defendant has not established any basis for concluding that either argument was meritorious. As discussed previously, defendant admitted that he understood what was going on and understood his rights, and defendant's waiver was voluntary based on the totality of the circumstances. "Counsel is not ineffective for failing to advance a meritless position or make a futile motion." *Henry*, 305 Mich App at 141. Accordingly, defendant cannot establish that he was prejudiced by trial counsel's alleged error.

## C. JURY INSTRUCTIONS

Defendant next argues that he was denied a fair trial by the trial court's instructions to the jury regarding the four counts of first-degree CSC. Defendant asserts that the instructions were confusing and misleading. We disagree.

"A party must object or request a given jury instruction to preserve the error for review." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). Defendant did not object to the trial court's instructions to the jury regarding the CSC charges. Therefore, this issue is unpreserved. Unpreserved challenges to jury instructions are reviewed for plain error affecting defendant's substantial rights. *People v Everett*, 318 Mich App 511, 526; 899 NW2d 94 (2017).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him. Accordingly, jury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *Id*. at 527 (quotation marks and citations omitted). "Even if instructions are imperfect, reversal is not required if they fairly present the issues to be tried and sufficiently protect the defendant's rights." *People v Chapo*, 283 Mich App 360, 373; 770 NW2d 68 (2009).

Defendant argues that the trial court erred by combining the instructions for all four counts of first-degree CSC. He contends that the instructions allowed the jury to find that proof of an element on one count was proof of an element on another count, without considering each crime separately. We disagree. The trial court instructed the jury regarding the four counts of first-degree CSC, in relevant part, as follows:

> The defendant is charged with the crime of four counts of first degree criminal sexual conduct. To prove these charges the prosecutor must prove each of the following elements beyond a reasonable doubt.
>
> First, that the defendant engaged in sexual acts that involving; in count one, entry into [the victim's] genital opening by the defendant's penis; in count two, entry into [the victim's] anal opening by the defendant's penis; and count three, entry into [the victim's] mouth by the defendant's penis; and in count four,

-4-

touching of [the victim's] genital openings with the defendant's mouth or tongue. Any entry, no matter how slight, is enough. It does not matter whether the sexual act was completed or whether semen was ejaculated.

Second, that the alleged sexual act occurred under circumstances that also involved the crime of kidnap[p]ing. To prove the crime of kidnap[p]ing the prosecutor must prove, beyond a reasonable doubt, first the defendant knowingly restrained another person. Restrained means to restrict a person's movement or to confine the person so as to interfere with that person[']s liberty without that person[']s consent or without lawful authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts.

Second, by doing so the defendant must have intended to engage in criminal sexual penetration or criminal sexual contact with that person. Or, second, that the defendant caused personal injury to [the victim]. Personal injury means bodily injury, disfigurement, chronic pain, pregnancy, or impairment of a sexual or reproductive organ or mental anguish. Mental anguish means extreme pain, extreme distress or extreme suffering either at the time of the event or later as a result of it.

Here are some things you may think about in deciding whether [the victim] suffered mental anguish. . . .

* * *

And third, the prosecutor must prove that the defendant used force or coercion to commit the sexual act. Force or coercion means that the defendant either used physical force or did something to make [the victim] reasonably afraid or [sic] present or future danger.

The trial court's instructions included all the elements of the charged offenses. However, rather than repeating the elements common to all four first-degree CSC counts, the instructions explained that element one, the sexual act, varied for each count. The court's instructions then listed the remaining elements, which were the same for each count. Contrary to defendant's contention, the instructions were not confusing or misleading. As plaintiff argues, the court's instructions avoided confusion by not repeating the same elements multiple times. Moreover, the trial court instructed the jury that each crime was a separate crime and that the jury was required to consider each crime separately in light of all of the evidence. "Jurors are presumed to follow a trial court's instructions[,]" *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013), and therefore, it is presumed that the jurors did not consider proof of an element on one count as proof of an element on another count. The instructions fairly presented the issues and sufficiently protected defendant's rights. See *Chapo*, 283 Mich App at 373. Accordingly, there was no plain error affecting defendant's substantial rights.

## D. AMENDMENT OF THE INFORMATION

Defendant also argues that the trial court abused its discretion by allowing the prosecution to amend the information during trial to add the count of armed robbery. We disagree.

"This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion to amend an information. The trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Perry*, 317 Mich App 589, 594; 895 NW2d 216 (2016) (citations omitted).

MCR 6.112(H) provides: "The court before, during, or after trial may permit the prosecutor to amend the information or the notice of intent to seek enhanced sentence unless the proposed amendment would unfairly surprise or prejudice the defendant." "A defendant may establish unfair surprise by articulating how additional time to prepare would have benefited the defense." *Perry*, 317 Mich App at 594.

When the prosecutor moved to amend the information to add the armed robbery count, the trial court asked defense counsel to explain how defendant would be prejudiced. Counsel merely stated, "We'd just simply object for the record." Thus, defendant failed to establish any unfair surprise or prejudice because of the amendment. Moreover, the fact that the amendment was based on defendant's own statements supports the conclusion that defendant was not unfairly surprised or prejudiced, because he would have been aware of such statements, which were properly admitted at trial. Accordingly, the trial court did not abuse its discretion by granting the prosecution's request to amend the information.

## II. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises two additional claims of ineffective assistance of counsel in a pro se brief filed pursuant to Administrative Order 2004-6, Standard 4. As discussed earlier, defendant failed to raise a claim of ineffective assistance of counsel in a motion for a new trial or request for an evidentiary hearing in the trial court so our review is limited to mistakes apparent on the record. See *Heft*, 299 Mich App at 80.

### A. FAILURE TO INVESTIGATE

First, defendant argues that trial counsel was ineffective for failing to investigate video and text messages and several witnesses, for not allowing defendant to testify at trial, and by failing to inform defendant of a plea offer.[4] A defendant must prove the factual predicate of his ineffective assistance of counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

---

[4] Defendant also refers to trial counsel's "[f]ailure to object to polygraph results entered into evidence." Defendant, however, does not provide any analysis of this claim. Moreover, neither the fact that defendant was given a polygraph test nor the results of that test were disclosed to the jury at trial.

-6-

There is no record evidence establishing that trial counsel failed to investigate the alleged videos, text messages, or witnesses, failed to allow defendant to testify, or failed to inform defendant of a plea offer. Moreover, with regard to defendant's claim that trial counsel failed to allow him to testify, "the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). Defendant affirmed on the record that he did not want to testify at trial and that it was his choice alone. Accordingly, the record does not support these claims of ineffective assistance of counsel.

## B. FAILURE TO CHALLENGE JURISDICTION

Second, defendant argues that trial counsel was ineffective for failing to challenge the trial court's subject-matter jurisdiction and in personam jurisdiction. We disagree.

Defendant argues that the trial court's subject-matter jurisdiction was lacking because the criminal statutes under which he was convicted (1) were not published in the Federal Register, (2) do not have implementing regulations, and (3) do not contain the enacting language required by Const 1963, art 4, § 23. There is no merit to these arguments. The trial court had subject-matter jurisdiction over defendant's case because his charges were felonies. See MCL 750.349; MCL 750.520b; MCL 750.529. "Michigan circuit courts are courts of general jurisdiction and unquestionably have jurisdiction over felony cases." *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011). Moreover, defendant fails to establish that state criminal statutes must be published in the Federal Register or have implementing regulations. Defendant cites 44 USC 1505(a), but this provision makes no reference to state criminal statutes. Finally, with regard to defendant's claim that the compilation laws do not contain the required enacting language under Const 1963, art 4, § 23, all of defendant's offenses are prescribed in the Michigan Penal Code, MCL 750.1 *et seq.*, which begins with: "The People of the State of Michigan enact[.]" See 1931 PA 328. The bound volume of the compiled laws further contains this enacting clause. There is no support for defendant's claim that each subsection of the compiled laws must contain the enacting clause. Moreover, the relevant public acts that created or amended the first-degree CSC, kidnapping, and armed robbery statutes also contain the enacting clause. See, e.g., 2014 PA 330; 2014 PA 23; 2004 PA 128. Accordingly, trial counsel was not ineffective for failing to advance these meritless arguments. See *Henry*, 305 Mich App at 141.

We also reject defendant's argument that the trial court did not have in personam jurisdiction over him. Defendant complains that he was not afforded a jurisdictional hearing and was never served with a summons and complaint. "In personam jurisdiction is vested in the circuit court upon the filing of a return of the magistrate before whom the defendant waived preliminary examination, or before whom the defendant had been examined." *People v Goecke*, 457 Mich 442, 458-459; 579 NW2d 868 (1998) (quotation marks and citations omitted). The trial court had in personam jurisdiction over defendant because a return was filed by the district

court judge before whom defendant was examined. Again, trial counsel was not ineffective for failing to advance this meritless argument. See *Henry*, 305 Mich App at 141.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron