*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KIM HARVEY,

Defendant-Appellant.

UNPUBLISHED
June 27, 2019

No. 338991
Wayne Circuit Court
LC No. 17-001990-01-FC

Before: CAMERON, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals by right his bench trial convictions of two counts of armed robbery, MCL 750.529, one count of felon in possession of a firearm, MCL 750.224f, and one count of possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. He was sentenced as a fourth habitual offender, MCL 769.12, to 35 to 70 years' imprisonment for each of the armed robbery convictions, 10 to 20 years' imprisonment for the felon-in-possession conviction, and 5 years' imprisonment for the felony-firearm conviction. We affirm.

On December 7, 2016, at about 7:40 a.m., a city bus was parked in front of a CVS store in Detroit. The bus driver noticed a man standing outside the CVS who appeared to be waiting for the store to open. A conversation ensued between the bus driver and the individual, and the bus driver invited the person to sit and wait in the bus given that it was an extremely cold morning. The bus driver could not identify the individual as being defendant. When asked if he saw the man in the courtroom, the bus driver stated, "I'm not sure."

The man sat in the bus for about five to ten minutes before he was joined by a CVS cashier who arrived at the location at approximately 7:50 a.m. She did not have a key to the store and at first was going to wait outside the CVS for the store manager's arrival, but the bus driver, whom she knew, invited her to wait inside the warm bus. Video footage from a

-1-

monitoring camera in the bus was admitted into evidence, showing the bus driver, the CVS cashier, and allegedly defendant. The cashier made an in-court identification of defendant as the man with whom she waited in the bus.[1] The CVS cashier testified that she had never previously seen defendant. At about 8:00 a.m., the store manager arrived at the scene and entered the CVS. The cashier noticed the manager's arrival, and she exited the bus and made her way to the CVS's entranceway in order to follow the manager into the store. The bus driver and the cashier testified that defendant followed the cashier out of the bus and into the store.

Inside CVS's vestibule, the cashier informed defendant that the store was not yet open and that he would have to go back outside for a brief moment. Defendant initially apologized to the cashier, but almost immediately thereafter told her that he wanted the store's cash. Defendant brandished a gun and placed it against the cashier's back. He forced her through the store and into a backroom where the manager's office was located. The manager had gone to his office after entering the store in order to prepare the tills for the day's business. The cashier knocked on the closed office door; the manager opened it, and defendant and the cashier burst into the office. Threatening to blow the cashier's head off if his demands were not met, defendant directed the manager to gather all the cash in the office. The manager started to put cash in an office trash bag. Because the manager did not move fast enough to suit defendant, defendant forced the cashier to take over and finish filling the bag with cash. The trash bag, containing about $3,500 to $4,000, was then loaded into a backpack that defendant had been carrying. Defendant fled the CVS after ordering the cashier and manager not to move until he was gone; they complied. In a photographic lineup, the store manager narrowed his identification of the perpetrator down to two persons, one of whom was apparently defendant. Multiple cameras in the store produced video footage that was admitted into evidence, showing the cashier, the manager, and allegedly defendant.

Defendant's parole agent testified that he began supervising defendant in August 2016, approximately four months before the robbery, and that defendant checked in with the agent once a month. The police showed the parole agent still photographs developed from video footage taken on the bus, and the agent testified that he informed the police that the person in the photographs looked like defendant. The cashier and the manager had noted that the robber was missing some front teeth, and the parole agent testified that defendant had missing front teeth.[2] Defendant was arrested about two weeks after the robbery. The prosecutor and defendant stipulated that defendant had been convicted of a specified felony and had no right to carry a firearm. The defense presented no witnesses.

The trial court, ruling from the bench, found defendant guilty of two counts of armed robbery and single counts of felony-firearm and felon-in-possession. The court found that the testimony of the CVS cashier was credible, including her identification of defendant as the perpetrator. The trial court also noted the consistent and accurate descriptions regarding

_____

[1] The CVS cashier was unable to identify defendant in an earlier photographic lineup, but she explained that the photo of defendant showed him when he was much younger.

[2] The cashier and manager gave fairly consistent physical descriptions of the robber.

defendant's missing teeth and other physical features. The court additionally mentioned the parole agent's testimony that the photographs from the bus appeared to depict defendant. Defendant was sentenced as indicated above.[3]

On appeal, defendant first argues that he was denied a fair trial when the parole agent testified that the person in the still photographs looked like defendant. Citing *People v Fomby*, 300 Mich App 46; 831 NW2d 887 (2013), defendant contends that the testimony encroached on the province of the trier of fact. Defendant did not challenge the parole agent's testimony at trial; therefore, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

MRE 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

The parole agent's testimony that the person in the photographs looked like defendant was rationally based on the agent's perception of the photographs and his in-person meetings with defendant not long before the robbery. The testimony was also helpful to the determination of a fact in issue, i.e., defendant's identity as the offender. See *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008) ("identity is an element of every offence"). Further, the parole agent did not specifically express an opinion regarding defendant's guilt or innocence. *Fomby*, 300 Mich App at 53. In *Fomby*, however, this Court, citing federal appellate decisions, appeared to accept the proposition that testimony is inadmissible when the witness is in no better position than the trier of fact with respect to identifying a person in a video or photograph. *Id.* at 52-53 (identification testimony by a witness from videos or photographs is not admissible unless there is reason to believe that the witness is more likely to correctly identify the person than the jury).[4]

---

[3] Defendant had three previous armed robbery convictions, making him a fourth habitual offender.

[4] The *Fomby* panel distinguished its facts from those in the federal cases, stating that unlike the officer in one of the federal cases, the officer in *Fomby* "did not identify defendant in the video or still images." *Fomby*, 300 Mich App at 53. The Court also noted:

> Further, because [the officer] was comparing the video surveillance video to still images that he himself had *created* from the six-hour long video, [the officer] was in the best position to identify the individuals in the photographs as being the same as those depicted in the video. [The officer's] testimony did not invade the province of the jury. [*Id.*]

The parole agent was personally familiar with defendant's appearance around the time the crime was committed, so it is arguable that the agent was indeed in a better position than the trial judge to identify defendant on examination of the photographs. Furthermore, assuming that the parole agent's testimony was inadmissible, we cannot conclude that defendant's substantial rights were affected. *Carines*, 460 Mich at 763. Stated otherwise, defendant has not demonstrated that the presumed error affected the outcome of the proceedings, nor has defendant shown that the error resulted in the conviction of an actually innocent person or seriously compromised the fairness, integrity, or public reputation of the proceedings independent of defendant's innocence. *Id.* at 763-764.

First, the parole agent did not testify conclusively that it was defendant in the photographs; rather, he merely stated that he informed the police that it "look[ed] like" defendant. Next, and more importantly, the trial court relied primarily on the CVS cashier's testimony identifying defendant as the perpetrator. The court, finding the cashier to be a very credible witness, stated:

> Throughout this time, and particularly in the vestibule, [the cashier] was in very close proximity to the perpetrator, literally inches apart, from the perpetrator, who she identified as an individual with a mustache, brown skin, blue hoodie, and notably some of that person's miss—front teeth were missing. The Court does find, as a fact, that [the cashier] identified that perpetrator as the defendant in this matter, Mr. Kim Harvey.[5]

The trial court also emphasized the consistent physical descriptions of defendant given by the cashier, manager, and the parole agent, including, notably, in regard to defendant's missing teeth.[6]

Furthermore, a judge, unlike a juror, possesses an understanding of the law that allows him or her to ignore some errors and to decide a case solely on the basis of evidence properly admitted at trial. *People v Taylor*, 245 Mich App 293, 305; 628 NW2d 55 (2001). Although the trial court referenced the parole agent's testimony about the photographs, it was hardly the focus of the court's ruling. Any error in admitting the parole's agent testimony regarding depictions in the photographs did not prejudice defendant.

Defendant, citing federal case law, continues his assault on the parole agent's testimony by arguing that it improperly informed the trier of fact that defendant was on parole. Defendant further maintains that he was unable to thoroughly confront and cross examine the parole agent because to do so would have revealed details of his parole status and criminal history. Defendant's contentions lack merit, especially since there was trial by bench trial, not jury. The

---

[5] The trial court spoke often of the cashier's credibility and the circumstances that made her identification particularly compelling and believable.

[6] As it did with respect to the cashier, the trial court found the manager and the parole agent to be credible witnesses.

-4-

crux of defendant's position is that revelations of his prior criminal background, or prior bad acts, were and would be prejudicial. See MRE 404(b).

Even had the parole agent not testified at all, the trier of fact—the trial judge—would still have been fully aware of the lower court file, which revealed defendant's habitual-offender status and criminal history, and defendant was charged with being *a felon* in possession of a firearm.[7] Once again, a judge, unlike a juror, possesses an understanding of the law that allows the judge to decide a case based on properly admitted evidence. *Taylor*, 245 Mich App at 305. There is nothing in the record suggesting that the trial court took into consideration defendant's past offenses in rendering its verdict. And defendant was free to confront and cross examine the parole agent absent any legitimate concern that details about his criminal history would prejudice him in the eyes of the trial court. The trial court certainly did not place any restrictions on cross-examination. There was no plain error affecting defendant's substantial rights.

Defendant next argues that he must be granted a new trial because the trial court's findings were based on inaccurate information. When rendering its verdict, the trial court stated that the CVS cashier "did identify the defendant as the person who perpetrated this crime upon her, during a prior court appearance." Defendant contends that no such event ever happened because both the preliminary examination and a preliminary parole violation hearing were waived, and there were no other prior hearings at which the cashier would have testified. During the trial, the cashier merely testified that she "saw [defendant] at the last court date." There is no indication in the record that the cashier identified defendant as the perpetrator in a prior court appearance. The trial court was mistaken or perhaps simply misspoke. We conclude that the trial court's factual finding was clearly erroneous. See *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (factual findings in a bench trial are reviewed for clear error); *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2007). Reversal, however, is unwarranted because the error was harmless and there was no miscarriage of justice. MCR 2.613(A); MCL 769.26. It is very clear from the record that the trial court found credible the cashier's identification of defendant, including his missing teeth, based on her close, face-to-face interactions with defendant immediately before and during the armed robbery. When viewed in context, the court's brief reference to a prior identification was merely an aside.

Next, defendant had argued that he was denied due process of law by an unduly suggestive identification procedure that tainted the in-court identification by the CVS cashier; he

---

[7] In *People v McDonald*, 303 Mich App 424, 436; 844 NW2d 168 (2013), a jury trial case, this Court observed:

> The jury knew that defendant had a prior felony conviction because he was charged with felon in possession of a firearm and because the parties stipulated that defendant had a prior felony conviction. The danger in revealing a defendant's parolee status is that a jury will recognize that the defendant had previously been convicted of a crime, but that was already known here, so the requisite prejudice allegedly stemming from the parole references has not been shown.

claims the identification had no independent basis and should have been suppressed. Defendant maintained that the unduly suggestive identification procedure pertained to the cashier's purported prior identification of defendant that was alluded to by the court. After defendant's appellate brief was submitted, he moved to withdraw this particular issue from consideration on appeal, and this Court granted the motion and struck the argument. *People v Harvey*, unpublished order of the Court of Appeals, entered April 11, 2018 (Docket No. 338991).[8]

Finally, defendant claims multiple instances of ineffective assistance of counsel. Defendant contends that trial counsel was ineffective for failing to utilize inconsistent statements or information to impeach the identification testimony given by the CVS cashier and defendant's parole agent. Defendant also argues that counsel was ineffective for failing to investigate and call an alibi witness.

Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court addressed the basic principles governing a claim of ineffective assistance of counsel, stating:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Citations and quotation marks omitted.]

---

[8] We note that, as mentioned earlier, the record contains no identification of defendant by the cashier before trial. We simply have the cashier's testimony that she saw defendant "at the last court date." There was no unduly suggestive identification procedure because there was no procedure where the cashier identified defendant before trial. And there is no evidence regarding the nature and circumstances of the cashier's observation of defendant "at the last court date." Moreover, given the cashier's face-to-face observation of defendant both before and during the robbery and her accurate description of defendant's missing teeth, we find there was a sufficient independent basis for the CVS cashier's in-court identification of defendant. See *People v Gray*, 457 Mich 107, 115-116; 577 NW2d 92 (1998).

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

With respect to the parole agent and as stated earlier, he testified that the photographs developed from the bus's video camera looked like they showed defendant. Defendant argues that "according to the police report, [the parole agent] had 'positively identified' [defendant], causing the police to issue the arrest warrant." Defendant then directs us to see a "police report, attached as Appendix A." There is no police report attached to defendant's brief on appeal, only a preliminary parole violation report from the Michigan Department of Corrections that has no relevance to the issue being raised. Accordingly, defendant fails to establish the factual predicate for this particular claim. See *Carbin*, 463 Mich at 600. Moreover, while we recognize the inconsistency of saying that the photographs looked like they depicted defendant and stating that they positively showed defendant, we cannot conclude that counsel was ineffective for not introducing a statement positively identifying defendant in the photographs.[9]

With respect to the cashier, defendant asserts that she testified that she had seen defendant at a prior court proceeding and had identified him. Yet, according to defendant, the "record reflects that there was no prior court date at which she could have identified [defendant]." As reflected in our earlier discussion, the cashier simply testified that she "saw [defendant] at the last court date," and there is nothing in the record suggesting that she identified defendant as the perpetrator at a prior hearing. Contrary to defendant's claim, the cashier did not testify that she previously identified defendant, and thus there was no basis to impeach her as asserted by defendant.

Lastly, defendant argues that he was denied the effective assistance of counsel because his attorney failed to investigate and call an alibi witness. The decision to call a witness is presumed to be a matter of trial strategy. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). Failing to call a witness "is only considered ineffective assistance if it deprived the defendant of a substantial defense." *Id*. "A substantial defense is one that could have affected the outcome of the trial." *Id*. We cannot, however, insulate the review of counsel's performance by simply calling it trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Initially, this Court must determine whether strategic choices were made after less than complete investigation, with any choice being reasonable only to the extent that reasonable professional judgment supported the limitations on investigation. *Id.*; see also *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015).

This Court granted defendant's motion to remand, authorizing defendant to move for a new trial and ordering the trial court to conduct a *Ginther*[10] hearing on the motion with respect to whether defense counsel was ineffective for failing to interview and call an alibi witness. *People v Harvey*, unpublished order of the Court of Appeals, entered April 3, 2018 (Docket No. 338991).

---

[9] This is assuming that the police report exists and contains the language claimed by defendant.

[10] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

At the *Ginther* hearing, the "alibi" witness, LF, testified that she had developed a friendship with defendant after she began a relationship with defendant's brother. She testified that defendant had stopped at her house on the day and around the time of the robbery. LF acknowledged that she had a stroke approximately three weeks after the alleged crime was committed. As a result of the stroke, LF had trouble remembering dates and information, and she admitted that the stroke affected her memory and cognitive functioning. Defense counsel also testified at the *Ginther* hearing, and she informed the court that she had been aware that defendant wanted to present an alibi defense. Defendant, however, only gave counsel information on a person known as "Lamont," with no mention of LF. According to defense counsel, she spoke to Lamont, who informed her that he wanted no involvement in the case. Counsel was unaware of any other witnesses who could have provided defendant an alibi defense. Defendant testified at the *Ginther* hearing that he told trial counsel about Lamont and LF, and also gave counsel the names of defendant's sister and a neighbor. The trial court found that LF's memory was severely affected by the stroke, that her testimony revealed confusion and was inconsistent and contradictory at times, and that she did not demonstrate a reliable recollection. The trial court found that neither her testimony nor defendant's was credible. On the other hand, the trial court found defense counsel's testimony credible. The court denied the motion for new trial, concluding that counsel's performance was not deficient and that defendant was not prejudiced by counsel's performance.

MCR 2.613(C) provides that "regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." See *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008) (applying MCR 2.613[C] in the context of a court's credibility findings at a *Ginther* hearing); see also *People v Clark*, 488 Mich 875; 788 NW2d 458 (2010) (adopting dissenting opinion from this Court's decision, which dissent had stated that a court is permitted to assess credibility at a *Ginther* hearing). Here, deferring to the trial court's credibility assessments relative to the testimony at the *Ginther* hearing, including defense counsel's testimony that defendant gave her the name of only one prospective alibi witness, and it was not LF, we hold that the trial court did not err in finding that defendant failed to demonstrate deficient performance. Counsel had no obligation to call to the stand a supposed alibi witness who was never brought to counsel's attention by defendant. Additionally, considering that defendant was tried via bench trial and that the trial court found that LF was not a credible witness at the *Ginther* hearing, we conclude that defendant fails to show or explain how he would have been prejudiced, even assuming that counsel should have called LF to testify.

We affirm.

/s/ Thomas C. Cameron
/s/ Jane E. Markey
/s/ Stephen L. Borrello