# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

STEPHAN SCOTT WILSON,

Defendant-Appellant.

UNPUBLISHED
May 29, 2018

No. 336796
Crawford Circuit Court
LC No. 15-003965-FH

Before: MURRAY, C.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of five counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (sexual penetration with person at least 13 and under 16), and one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a) (sexual contact with person at least 13 and under 16 by actor 5 or more years older). Defendant was sentenced to concurrent prison terms of 7 to 15 years for the CSC-III convictions and 16 months to 2 years for the CSC-IV conviction. We affirm.

This case arises from contacts between defendant and the minor victim, AH, in August 2013, when AH was 15 years old and defendant was 36 years old. Defendant was one of AH's supervisors at the farm where she worked. AH testified that defendant asked her to go camping. According to AH, defendant said that some of his family members would come as well and that AH could share a tent with his nieces. AH and her grandmother agreed to go camping with defendant. After AH's grandmother went to sleep in her own cabin, defendant told AH that his family was not coming, but that he and AH could share a tent.

AH testified that she woke up when defendant got on her air mattress. AH told defendant to leave her alone, but defendant rolled AH over to face him and started rubbing her legs. AH testified that she repeatedly told defendant to leave her alone, but that his touching kept escalating. AH testified that defendant performed cunnilingus on her and penetrated her vagina with his fingers and with his penis. AH testified that later that same night, defendant touched her breasts under her sweatshirt and again penetrated her vagina with his fingers and with his penis. AH also testified about another incident, not charged in this case, in which defendant picked AH up on a motorcycle, took her to his apartment, and there penetrated her vagina with his penis.

In the weeks following the assaults, AH attempted to avoid defendant despite his repeated attempts to contact her. AH testified that she first reported the assault to her friend, AK, in

-1-

November. AK testified that after AH reported the assault, AK contacted a teacher, Milline Heslop. Heslop testified that after AK told her what AH reported, Heslop spoke to AH and told her that she needed to talk to the principal, Delwin Garcia. AH testified that she reported the incident to Garcia. Garcia testified that, since he is a mandatory reporter, after AH began telling him about the assault, he called the authorities and brought in the female vice principal, Kassie Norcross, to speak with AH. Norcross testified that she spoke to AH about the incident and that AH showed her messages from defendant on social media. Lorene Henderson, AH's grandmother, testified that when they went camping, it was her understanding that AH would share a cabin with defendant's nieces. Henderson testified that she was very upset the next day when she learned that defendant and AH had shared a tent, but that AH denied that anything happened between AH and defendant. Tonya Baker, a registered nurse, testified that AH's medical records indicated that AH reported that a man assaulted her while they were camping; that the patient fell asleep and awoke to the man asking to lie next to her; that after the patient refused, the man inserted his penis into her vagina; and that the same thing happened again the next night.

Michigan State Police Trooper Andrew Sysko responded to Garcia's call and interviewed AH at school. Sysko testified about AH's report in detail. His testimony largely matched AH's testimony. However, Sysko also testified that originally his report stated that the assault occurred in April 2013, not August 2013, and that originally his report stated that the first two assaults occurred on consecutive nights, not on the same night. Sysko also testified about his conversations with Garcia, AK, and SW (another student who worked with AH and defendant).

On appeal, defendant argues that he received ineffective assistance of counsel. To preserve a claim of ineffective assistance of counsel, a defendant must bring a timely motion for a new trial or request a *Ginther*[1] hearing raising the issue. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant did not move for a new trial or request a *Ginther* hearing at the trial court level. On appeal, defendant has requested remand to the trial court for a *Ginther* hearing. However, defendant did not make this request in a proper motion for remand as required by MCR 7.211(A) and MCR 7.211(C)(1). See *People v Bass*, 317 Mich App 241, 276 n 12; 893 NW2d 140 (2016) (concluding that the defendant's request for remand for a *Ginther* hearing was improper when the defendant failed to file a motion to remand under MCR 7.211(C)(1) and instead only raised the issue in his Standard 4 brief). Therefore, defendant failed to preserve the issue, and our review is limited to mistakes apparent on the record. *Heft*, 299 Mich App at 80.

To establish a claim of ineffective assistance of counsel, a defendant must establish that deficient performance of counsel prejudiced the defense. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); see also *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994).

To establish deficient performance, a defendant must show "that counsel's performance fell below an objective standard of reasonableness . . . ." *Pickens*, 446 Mich at 309. In

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

evaluating a claim of ineffective assistance of counsel, there is a "strong presumption" that counsel's actions constituted sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012); see also *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). This Court does not "substitute [its] judgment for that of counsel on matters of trial strategy," nor does this Court assess counsel's competence with the "benefit of hindsight." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

To establish prejudice, a defendant "must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* at 600, quoting *Strickland*, 466 US at 694.

Defendant bases his claim on defense counsel's failure to object to hearsay testimony from Sysko, AK, Heslop, and Norcross, as well as his failure to request a mistrial based on this testimony. " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible unless it falls within one of the exceptions supplied in the Michigan Rules of Evidence. MRE 802. However, an out-of-court statement is not hearsay when its purpose is to demonstrate its effect on a listener, rather than to prove the truth of the matter asserted. *People v Gaines*, 306 Mich App 289, 306-307; 856 NW2d 222 (2014).

Defendant relies heavily on *People v Shaw*, 315 Mich App 668, 672-677; 892 NW2d 15 (2016), in which this Court concluded that counsel's failure to object to inadmissible hearsay in a criminal sexual conduct case fell below the objective standard of reasonableness when the prosecution presented detailed testimony from witnesses corroborating the complainant's story and defense counsel had no strategic reasons for failing to object. In *Shaw*, defense counsel failed to object to detailed testimony about statements made by the complainant to several witnesses, including three family members who described in detail conversations with the complainant during which the complainant described specific incidents of sexual abuse by the defendant. *Id.* at 673-674. Following a 10-day *Ginther* hearing regarding the performance of the defendant's trial counsel, the trial court denied the defendant's motion for a new trial. *Id.* at 671. On appeal, this Court held that defense counsel's failure to object to this testimony from the complainant's family members fell below an objective standard of reasonableness because the statements were clearly hearsay and defense counsel conceded that he had no strategic reasons for failing to object. *Id.* at 674.

Defense counsel in *Shaw* also failed to object to testimony from the primary investigating officer, who recounted detailed descriptions from the complainant about the alleged abuse and further testified extensively about the actions she took that she believed confirmed and corroborated the complainant's stories. *Shaw*, 315 Mich App at 676-677. In closing arguments, defense counsel addressed minor inconsistencies between the officer's testimony and the complainant's testimony, such as where the complainant said the defendant worked and the type of underwear the defendant wore. *Id.* at 676-677, 677 n 3. This Court held that defense counsel's failure to object fell below an objective standard of reasonableness since the statements were inadmissible hearsay and there was "no basis for defense counsel to have reasonably concluded that he could obtain a tactical advantage by allowing the inadmissible hearsay

testimony in order to ferret out inconsistencies" because the inconsistencies were very minor. *Id*. at 676-677.

In *People v Douglas*, 496 Mich 557, 561, 586; 852 NW2d 587 (2014), which involved allegations of sexual abuse of the defendant's then three-year-old daughter, the Court concluded that there was a reasonable probability that the outcome of the case would have been different had inadmissible hearsay testimony been disallowed, because "the prosecution's case hinged wholly on the credibility of [the complainant's] allegations," and the complainant's credibility was bolstered through the hearsay testimony of multiple witnesses that they believed the complainant was being truthful. The Court held that it was reasonably probable that, but for this testimony, the outcome of the defendant's trial may have been different, given the centrality of credibility to the case, the lack of evidence beyond the complainant's allegations, and the fact that the witnesses were professionals who were involved in the investigation of the case. *Id*. at 587-588. See also *Shaw*, 315 Mich App at 677-678 (holding that it was reasonably probable that the outcome of the trial would have been different had defense counsel objected to the inadmissible hearsay testimony of several witnesses, including an examining physician and an officer who essentially gave "an official stamp of approval" by corroborating and vouching for the complainant; the hearsay was frequent, extensive, and powerful, and there were no "significant circumstantial proofs").

Here, Sysko's testimony that Garcia told him that AH disclosed that defendant sexually assaulted her, and that Garcia relayed AH's "synopsis" of what happened, was not hearsay because it was not offered to prove the truth of the matter asserted; rather, it served to explain why Sysko interviewed AH. "[A] statement offered to show why police officers acted as they did is not hearsay." *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007). Since objection to this testimony would have been futile, counsel cannot be considered ineffective for his failure to object. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Additionally, defendant's argument that testimony from AK, Heslop, and Norcross was inadmissible hearsay has no merit. Considering the testimony as a whole, it is apparent that none of these statements included any detail about the assaults. Instead, these statements were offered to explain why each respective witness took the steps that she did following AH's report, not to prove that AH was assaulted. Since these statements were not offered for the truth of the matter asserted, they were not hearsay, *Gaines*, 306 Mich App at 306-307; *Chambers*, 277 Mich App at 11, and because objection to this testimony would have been futile, counsel cannot be considered ineffective for his failure to object, *Ericksen*, 288 Mich App at 201.

However, Sysko's testimony about what AK and SW reported to him was arguably inadmissible hearsay because it was not relevant to why Sysko took the actions he did. As to SW's testimony, though, defense counsel objected, and the court instructed the jurors to consider Sysko's testimony for the limited purpose of understanding why he took the actions that he did. Jurors are presumed to follow instructions from the court. *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013). However, the limiting instruction did not address Sysko's testimony about what AK told him.

Regardless of the admissibility of testimony from AK, Heslop, and Norcross, and testimony from Sysko about what Garcia and AK reported to him, defendant has failed to

-4-

overcome the presumption that failing to object constituted sound trial strategy. None of this testimony revealed any details about the assaults or reinforced AH's testimony about how the assaults happened. Thus, defense counsel may have chosen to stay silent so as not to draw attention to this testimony. See, e.g., *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995). Therefore, defendant has failed to establish that defense counsel's conduct fell below an objective standard of reasonableness when he failed to object to these portions of the testimony.

However, Sysko's testimony relaying what AH told him in the interview was much more extensive than any other hearsay testimony. Sysko went into considerable detail about what AH reported to him surrounding all three assaults in a manner that may have served to corroborate AH's testimony. While there were some inconsistencies between Sysko's report and AH's testimony regarding whether the first two assaults happened in April or August and whether they happened on one night or on two consecutive nights, those are minor inconsistencies when compared to the consistency of other details corroborating AH's testimony about the assaults themselves. Defense counsel highlighted these inconsistencies in his closing argument and attempted to impeach Sysko's credibility by eliciting testimony from Sysko that he did not follow the protocol required for forensic interviewing and that the purpose behind the protocol is to ensure that the interviewee is being truthful. However, given the small inconsistencies compared to the detail provided by Sysko in his testimony, "there was no basis for defense counsel to have reasonably concluded that he could obtain a tactical advantage by allowing the inadmissible hearsay testimony in order to ferret out inconsistencies." *Shaw*, 315 Mich App at 676-677. Despite the presumption that trial counsel's trial strategy was sound, *Trakhtenberg*, 493 Mich at 52, defense counsel's failure to object to Sysko's detailed hearsay testimony about AH's account of the assaults was not objectively reasonable.

Nevertheless, even if defense counsel's failure to object fell below an objective standard of reasonableness for all of the above testimony, there is not a reasonable probability that the outcome of the trial would have been different had defense counsel objected. *Shaw*, 315 Mich App at 677. None of the testimony from AK, Heslop, or Norcross included details about the assaults themselves, so the testimony did not serve to provide a more complete account of the alleged crimes than did AH's testimony alone. Similarly, none of Sysko's testimony about what AK, Garcia, and SW told him included details about the assaults. Additionally, although AH's credibility was a central issue at trial, none of the complained-of testimony expressed an opinion about AH's truthfulness.

Turning to Sysko's more problematic hearsay testimony about what AH reported to him, defendant has failed to establish that, had defense counsel objected, there is a reasonable probability that the result of the trial would have been different. Sysko's testimony largely mirrored that of AH's testimony and added no new information to AH's story. AH also testified and was thoroughly cross-examined. Defendant argues that Sysko's testimony was outcome-determinative because, in addition to confirming the details of AH's testimony, Sysko vouched for AH's credibility when he testified that he told her to tell the truth. However, Sysko also testified that every child is different in terms of truthfulness, and he admitted that he did not follow forensic protocol designed to ensure truthfulness of a child's report. Sysko did not express an opinion about AH's credibility; nor did he provide any detail about how he did or did not corroborate or confirm that AH was telling the truth.

Moreover, considerable circumstantial evidence was presented in addition to AH's direct account of the assaults. Henderson testified that AH did in fact share a tent with defendant alone. Multiple witnesses expressed skepticism about the relationship between defendant and AH, and multiple witnesses testified that they saw AH on the back of defendant's motorcycle on the date of the third assault. Finally, several condemning messages exchanged between defendant and AH on social media were admitted into evidence. The messages did not have the tone of a mentor concerned about his mentee; rather, they had the tone of a scorned suitor desperately trying to regain attention. While these pieces of evidence are not direct evidence that defendant sexually assaulted AH, nor incriminating in and of themselves, they do make it more likely that defendant had the opportunity to sexually assault AH and did in fact sexually assault AH.

We conclude that defendant has failed to establish, on the existing record, that there is a reasonable probability that the outcome of the trial would have been different had counsel objected to the hearsay testimony presented at trial.

Affirmed.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra