*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 13, 2020

Plaintiff-Appellee,

v

No. 346390
Wayne Circuit Court
LC No. 18-004458-01-FH

ELIJAH ZACKARY ROBINSON,

Defendant-Appellant.

Before: MARKEY, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

Defendant was convicted following a jury trial of carrying a concealed weapon, MCL 750.227. He was sentenced to three to five years in prison. Defendant appeals as of right. Finding no errors warranting reversal, we affirm. This appeal is decided without oral argument. MCR 7.214(E)(1)(b).

## I. BASIC FACTS AND PROCEDURAL HISTORY

On May 1, 2018 at approximately 2:00 a.m., River Rouge Police Officer Sergio Olivito was on routine patrol when he observed a vehicle disregard a stop sign, and he effectuated a traffic stop. When Officer Olivito approached the driver, River Rouge Police Sergeant Ronald Guffey was present at the scene. There were two individuals in the car, the driver and defendant, the front seat passenger. When the driver was asked for his driver's license and registration, he presented a "sovereign citizens card" and represented that the vehicle was a rental. Officer Olivito learned that the license for the driver was suspended. The officer also opined that the sovereign citizens card was not "a legal instrument." It was determined that the vehicle would be impounded, and defendant, as the passenger, had to be removed from the car.

Defendant was asked to step out of the car, but he hesitated. Officer Olivito noticed that there was something in defendant's right front pants pocket. When asked what he had in his pocket, defendant indicated that it was a flashlight. Officer Olivito recognized that it was a gun. Sergeant Guffey recovered the gun, a black subcompact Smith & Wesson. The gun was loaded with one round in the chamber and six rounds in the magazine. Defendant refused to answer whether he had a concealed weapons permit, a license that authorizes a civilian to carry a concealed

-1-

weapon, and the police determined that he did not have a valid permit. Defendant was arrested at the scene for carrying a concealed weapon (CCW).

At his arraignment on the information, defendant's counsel waived formal reading of the information and indicated that defendant stood mute. However, defendant objected to the proceeding and sought to "waive counsel." Defendant indicated that he would represent himself. Wayne Circuit Court Judge Dalton Roberson advised defendant that he would not represent himself at that stage of the proceeding. Defendant inquired whether the judge had received his motion to dismiss. However, defendant filed the document with court administration, not the court clerk. The court noted that defendant's actions demonstrated why he needed representation by counsel because defendant did not know what he was doing. Defendant orally moved to dismiss the charge of carrying a concealed weapon, relying on his "certificate of genuineness" from the state department. The court asked to see a copy of the motion, but defendant did not have one. The court advised defendant that he should keep copies of his filings if he was acting as his own lawyer. The court noted that the arraignment was complete, and the case was assigned to Judge Cynthia Gray (CG) Hathaway.

On June 14, 2018, Judge CG Hathaway held a calendar conference hearing that notified the parties of the schedule and motion deadlines. Defendant refused to sign the document and again sought to "waive counsel." Defendant stated that he did not want counsel representing "my estate," counsel had a "conflict of interest," and she was "dangerous" to his estate. The trial court indicated that it would allow defendant to represent himself, but counsel would remain in her position as an advisor. Defendant nonetheless continued to argue with the court about the need for advisory counsel. Defendant then inquired about the status of his motion for dismissal because he was a "foreign state." The trial court noted that it had not received any such motion and asked if it had been sent to the court and the prosecutor. Defendant inquired how he was supposed to know where to send the motion. The trial court noted that it could not address bond because defendant refused to cooperate with the evaluation and that defendant should cooperate with defense counsel to learn to whom to serve the motions. As defendant was led away, he stated that he did not consent to the proceedings.

On July 20, 2018, Judge CG Hathaway held a hearing on defendant's motion to dismiss, but denied the motion by concluding that the court had jurisdiction over defendant. Additionally, the trial court rescinded its prior order allowing defendant to represent himself, finding that defendant would not act in an orderly and non-disruptive manner during the trial. Consequently, counsel would conduct the trial and not merely act in an advisory capacity. Further, the trial court advised defendant that if he disrupted the trial, he would not be present in the courtroom. Defendant inquired if the trial court had an oath of office. He repeatedly asked the question despite the trial court's affirmative answer. The trial court then noted for the record that defendant had to be restrained by the deputies in the courtroom, and this conduct provided another reason to deny his request for self-representation.

On August 30, 2018, Judge Michael Hathaway was assigned to preside over the trial, but it had to be adjourned. Defendant once again moved to dismiss the CCW charge for lack of jurisdiction. Specifically, he asserted that he was a "Moor Executive Officer" and dismissal was appropriate in light of the "Treaty of Peace and Friendship with Morocco of 1786." The trial court denied the motion, stating that the 1786 treaty was superseded by a treaty of 1952, and held that it

had personal and subject matter jurisdiction.  Defendant requested a jury trial and to represent himself.  The trial court advised defendant that he was expected to follow the rules of the courtroom, there were restrictions on his conduct before the jury, the charge was carrying a concealed weapon, and the penalty was five years.  The trial court also advised defendant that the conduct of a bench trial was "more liberal" than a jury trial because there was no "nonsense" before a jury.  Although the trial court agreed that defendant could represent himself, the trial court advised that defense counsel would remain on the case in an advisory capacity.  Again, defendant insisted that advisory counsel presented a "conflict of interest."  The trial court scheduled the case for a jury trial at defendant's request.

On the trial date, defendant again alleged that he was not subject to prosecution.  Specifically, defendant alleged that he was a Moor "representing treaty of friendship and peace," he was the executive officer of his estate, and he was the "owner and the custody holder" of the certificate of genuineness.  The trial court again advised that defendant was subject to the laws of this state.  With regard to the right of self-representation, the trial court stated:

> In the past you have expressed an interest in representing yourself, which you have a right to do, but I just need to warn you that you are charged with a 5-year felony.  You have a lawyer that was appointed to represent you, a very competent lawyer who is prepared to move forward and represent you in this matter.  But I also indicated to her the last time we were on the record that if you persist in your insertion of your right to represent yourself then I will just simply ask [defense counsel] to continue in her role of advisor so in case any legal issue comes up you can consult her.

> But this case, if you do represent yourself, you're going to be expected to follow the rules of criminal procedure from picking the jury to making opening statements, cross examining the prosecution witnesses, to making your closing arguments.  And one of the things that you will not be permitted to do is interrupt or disrupt this trial in any way or attempting to advance your idea of the law that the jury is to take into account in this case.  As the trial Judge I tell the jury what the law is.  You don't tell the jury what the law is especially if your idea of the law is what has be[en] written about in one way or another in the various writings that appear in the Court file and or some of your oral statements.  It's the law of the State of the Michigan, the United States[,] the Michigan rules of criminal procedure that will apply in your case.

> Now I also want to make a record with respect to . . . something I received in the mail  a few days ago called a Notice Statement, and it contains five numbered paragraphs.  Paragraph one says:  . . . I require you Michael Hathaway . . . to discharge[] all matters pertaining to 18-004458-01, Elijah Robinson and close the account.

> Paragraph 2, says furthermore, I require you to release Elijah Robinson on his own personal recognizance until the hearing.

Third paragraph: If, Elijah Robinson is not released within 3 days, then you agree to pay 100 million dollars to Elijah Robinson on the next hearing.

This is the next hearing. I'm not paying all that money.

And then the forth [sic] paragraph is, I will need your confession to treason, Treasonous treatment, and find Elijah Robinson waiver benefit privilege and waiver no rights at any time, at any place, without prejudice . . . . All rights reserved.

So I received this and there is nothing for me to do about it other than to tell you perhaps what you already know, and that is that I do not recognize an agreement to pay 100 million dollars, and I will not confess to treason.

And once again, this case will proceed in accordance with the Michigan Rules of Civil [sic] Procedure and the laws and statutes of the State of the Michigan.

The trial court then inquired whether defendant wished to represent himself on two occasions, and defendant instead began to argue his status as a Moor. The trial court admonished defendant that he could not continue to interrupt the court and the proceedings, and he would be removed from the courtroom while the trial occurred without his presence. The trial court asked defendant a third time whether he wished to represent himself and whether he wanted a jury or bench trial. Defendant responded by asking if a jury trial was a contract. At that time, the trial court inquired of defense counsel if defendant had been evaluated for competency. Defendant responded, "I'm clearly competent because I have made my status on the record of my name, body and soul pursuant [to] Cannon's Positive of Law, Cannon 2056 and 2057. I'm extremely competent." Defense counsel indicated that he has been competent since her assignment, but she was unaware of what transpired in district court when defendant was assigned different counsel. Finally, defendant expressed that he would represent himself according to the Michigan Court Rule, select a jury, and leave counsel in an advisory role.

Before jury selection, the trial court again advised defendant that he could not be disruptive to the proceedings, and it would be to defendant's advantage to remain in the courtroom. However, defendant was told that he would be removed and the trial would continue without him if he did not abide by the court's instruction. Specifically, defendant was given notice that his right of self-representation was conditional and premised on following the rules. At the conclusion of jury selection, defendant sought to admit an exhibit. The trial court advised defendant that opening statement was the time to discuss what the evidence would show and speeches about Moor values or what the law should be was inappropriate. The court also noted that the admission of evidence, including exhibits, would occur after opening statements occurred. During opening statement, defendant argued that his defense was his "American nationality" and the privileges guaranteed by the US Constitution.

During cross-examination of Officer Olivito, defendant asked the officer to recite the Second Amendment. The trial court instructed defendant that this was not a Second Amendment trial, and he could question the officer about the traffic stop and arrest. Defendant continued to cross-examine the officer about the contents of the police report and again began to question him

about the Second Amendment. The trial court admonished defendant that the CCW charge pertained to a Michigan statute that made it unlawful to carry a weapon without a license. Defendant then questioned the validity of the US Constitution in the courtroom. The trial court instructed defendant to stop arguing with the court and either cross-examine the witness within permissible boundaries or end the questioning.

Despite the court's instruction, defendant then posed the following question to Officer Olivito, "So you said that the second amendment pertains to the right to bear arms?" The court then advised defendant accordingly:

> All right. Mr. Robinson, I'm going to have to - - you do this one more time I'm just going to make it so - - you have the Constitutional right to a fair trial, but that also requires you to follow the court's rulings and rules of engagement. I told you not to question this witness about the second amendment. The statute in the State of Michigan requires people to obtain licenses to carry pistols has been tested in our Federal Courts numerous times and does not violate the second amendment. But the jury in this case doesn't even have to get into that issue any way. It's already taken care of.
>
> I instruct the jury on the law. You litigate the facts of the case. And if you have any questions of this witness you - - otherwise I'm going to have [defense counsel] do the cross-examination?

Instead of following the trial court's instruction regarding witness questioning, defendant once again began to question the court about its authority and "oath of office." The trial court reminded defendant that he was instructed to follow the rules and procedures of the court and if he persisted in failing to follow direction, defendant would be removed from the courtroom. Defendant questioned the legality of that action, and the trial court had defendant "taken to the back." Defense counsel took over the cross-examination of the witnesses. Although defendant's theory raised Second Amendment and constitutional rights, defense counsel focused on the officers' lack of knowledge of who carried the gun into the car and the time spent with the driver while defendant was alone in the vehicle. Defendant returned to the courtroom to determine if he wanted to testify. Defendant stated:

> You want to dishonor your oath of office. I am not obligated to participate in this trial because you have dishonored the oath of office. You are sitting next to the flag of the United States of American [sic] and you are making false accusations misleading statements, and they are super treasonous and I'm acting upon my right to remove myself from this contact that you're all over. I do not want to be a part of this and I would like this case moved to the Michigan Court of Appeals because you are a terrorist treasonous person and I do not want to be here any longer.

* * *

> I still motion for leave to appeal, and I don't consent to [defense counsel] operating this case because she doesn't have custody of my name, mind, body or

soul. I have property of it. No one in here does. And you dishonored your oath of office. And I am grieving you to the Tenor [sic] Commission and you too.

The trial court concluded that defendant did not wish to testify, and he was removed from the courtroom. A discussion occurred regarding jury instructions addressing defendant's exercise of his right of self-representation in light of the trial court's decision to vacate the right because of the interference with the trial. When the jury returned to the courtroom, the trial court advised the jury:

So we brought the defendant back out to ask him if he wanted to testify because he has a right to testify on his own behalf as long as he just testifies and doesn't make speeches, but he also has a right not to testify. What Mr. Robinson expressed while he was out here was that he found the whole process to be treasonous and so he didn't want to have any more - - didn't want to have any part of it any more. So he's back behind the courtroom, and we're just going to have to finish the trial without him, I guess.

To provide you some context here and I want to be fair about this. Mr. Robinson professes to be what is called sovereign Moor, and that's sort of a movement that there is some followers of and they believe as best as I can tell, that they're sovereign entities and that the laws doesn't apply to them. I'm not totally clear on what their belief system is. But the - - he's a citizen and a resident of the United States. So obviously our laws apply to him whether he thinks they do or not. That also means that his Constitutional protections apply to hm whether he wants them or not. It means he's entitled to have a fair trial as fair as we can make it without his interfering with it.

But anyway, the issues that you're going to have to decide in this case is whether or not he committed the crime that he is charged with. That's all. Not whether his idea of the second amendment has any application here or whether I'm guilty of treason and anything else. But he chose not to participate any further in the trial.

And so [defense counsel] was originally appointed as his lawyer and who he said he didn't want representing him now has to represent him again because he just wanted to do it his own way, and we were never going to really get to a conclusion here with him in the courtroom.

So you know it's still he's entitled to a fair consideration of the evidence that you heard whether he's guilty of the crime or not.

Defense counsel argued to the jury that the individual who brought the gun into the vehicle was unknown. It was suggested that the driver of the rental vehicle was caught without a valid license and had the time to pass the gun over to defendant. Under those circumstances, defense counsel argued that defendant could not be convicted of CCW. Despite this argument, the jury convicted defendant as charged.

I. WAIVER OF RIGHT TO COUNSEL

Defendant first alleges that he is entitled to a new trial because the court failed to obtain a valid waiver of his right to counsel. We disagree.

A trial court's factual findings addressing a knowing and intelligent waiver of the right to counsel are reviewed for clear error. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). Questions of law, including the meaning of the phrase "knowing and intelligent," are reviewed de novo. *Id*. The appellate court may not substitute its view for that of the trial court, but must respect the trial court's factual findings and determinations regarding credibility. *Id*. at 642.

Defendant did not challenge the validity of the waiver of the right to counsel in the trial court. Appellate relief for a claim of error not raised in the trial court will not be granted unless "the proponent establishes, among other things, that the unpreserved error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *People v Cain*, 498 Mich 108, 112; 869 NW2d 829 (2015). The rule that issues not raised in the trial court cannot be raised on appeal absent extraordinary or compelling circumstances is rooted in fairness; it allows a litigant to address an error at the time it occurs, and it protects the public from bearing the cost of a new trial that could have been avoided by a timely objection. *Id*. at 114. Even consideration of unpreserved claims of constitutional error are disfavored. *Id*. at 115. The requirement of a contemporaneous object not only permits correction of a claim of error, but prevents a litigant from "sandbagging" the court by remaining silent about the objection and belatedly raising the claim if the trial does not conclude in his favor. *Id*. Thus, unpreserved claims of structural error are nonetheless reviewed for plain error affecting substantial rights. *Id*. at 116. To meet the plain error standard, the proponent must establish that (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the error affected substantial rights, meaning the outcome of the proceedings was affected. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). If these three requirements are met, the fourth prong involves the court's exercise of its discretion, and reversal is warranted only when it is concluded that the plain, forfeited error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*.

Although an accused is afforded the Sixth Amendment right to counsel, US Const, Am VI, he also has a constitutional right to proceed without counsel if he truly wants to do so. *Faretta v California*, 422 US 806, 817; 95 S Ct 2525; 45 L Ed 2d 562 (1975). In Michigan, the right of self-representation is explicitly recognized by our constitution and by statute. Const 1963, art 1, § 13; MCL 763.1; *People v Anderson*, 398 Mich 361, 366; 247 NW2d 857 (1976). When a defendant initially requests to proceed as his own counsel, a court must determine that (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business. *People v Russell*, 471 Mich 182, 190; 684 NW2d 745 (2004) citing *Anderson*, 398 Mich at 367-368. Compliance with the waiver of counsel procedures is necessary to a judicial grant of the right to proceed in propria persona. *People v Adkins (After Remand)*, 452 Mich 702, 721; 551 NW2d 108 (1996).

Additionally, MCR 6.005(D)(1) addresses the procedure for a defendant's waiver of the right to an attorney and prohibits a court from granting the request without first advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory

minimum sentence required by law, and the risk involved in self-representation. *People v Williams*, 470 Mich 634, 642-643; 683 NW2d 597 (2004). A defendant may only enter into self-representation fully aware of the dangers of acting as his own counsel, or "with his eyes open." *Faretta*, 422 US at 835.

When a defendant seeks to represent himself, trial courts must substantially comply with the substantive requirements set forth in both *Anderson* and MCR 6.005(D) through a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures. *Adkins*, 452 Mich at 726-727. When the trial court fails to substantially comply with those requirements, the defendant has not effectively waived his right to the assistance of counsel. *Russell*, 471 Mich at 191-192.

Here, defendant unequivocally requested the waiver of his right to trial counsel, by requesting self-representation at each hearing and rejecting the assistance of trial counsel. Further, defendant's right was knowingly, intelligently, and voluntarily waived as established by the exchange with the trial judges regarding the advantages and disadvantages of self-representation. Indeed, both Judge Roberson and Judge CG Hathaway expressly noted that defendant's filing of the motion to dismiss with the wrong office and the failure to serve the appropriate parties demonstrated his need for legal assistance. Defendant was advised that he must abide by the rules governing practice and procedure despite his lack of legal training. Finally, defendant agreed to abide by the court rules and rules of evidence and acknowledged that he would not disrupt the court proceedings. Accordingly, the trial judges complied with the requirements of the *Anderson* decision.

Additionally, the trial court complied with the procedures of MCR 6.005(D)(1) by advising defendant of the charge of CCW, the possible penalty of five years, and warning him of the risks of self-representation. Defendant argues that the trial court did not adequately advise him of the risks of self-representation. However, the trial court informed defendant that he would have to comply with the rules of the court, with the court rules to select the jury, make an opening statement, cross-examine the prosecution witnesses, and make a closing argument. Further, defendant was apprised that he could not advance legal theories that did not comport with Michigan law and the court rules, and that he would be removed for disruptive behavior. Thus, the trial court provided adequate advice to defendant about the perils of self-representation.

Despite the compliance with the caselaw and court rules, appellate counsel argues that defendant did not knowingly and understandingly waive his right to counsel because of his apparent mental illness. Before the trial judges, defendant argued that he was a member of the "Moorish Science Temple of America," that he was governed by a Moroccan Treaty, and that he was not subject to the court's jurisdiction. This argument prompted Judge Michael Hathaway to inquire if defendant had been evaluated for competency. Defendant seemingly took offense to that inquiry and confirmed on the record that he was competent. Defense counsel further affirmed that during her representation she found defendant to be competent. Indeed, defendant submitted documentation regarding his membership in the Moors and their laws, and his belief that he was a person of national origin entitled to a possessory interest in land. A nonconventional belief system does not equate with mental incompetence, but also, membership in religious or other

organizations does not exempt an individual from the laws and regulations passed by the state.[1] Accordingly, the trial judges heard defendant's argument involving his membership in the Moors and his reliance on the Second Amendment to preclude the prosecution, but rejected his argument by relying on the statutory violation of CCW in accordance with MCL 750.227.[2] Appellate counsel's blanket assertion of mental incompetency is not supported by the record.[3] Accordingly, defendant failed to demonstrate plain error affecting substantial rights arising from this unpreserved issue. Defendant adamantly sought to represent himself in the trial court and attempted to prevent advisory counsel from assisting him. The trial court substantially complied with the *Anderson* requirements as well as MCR 6.005 and obtained a knowing, voluntary, and understanding waiver.

## III. JUDICIAL IMPARTIALITY

Defendant next submits that the trial court improperly made misrepresentations to the jury regarding defendant's statements and beliefs and that these misrepresentations amounted to testimony by the trial judge. This claim of error does not entitle defendant to appellate relief.

A defendant has a right to a neutral and detached judge and a trial court may not "pierce the veil of judicial impartiality." *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013). A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality. *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *People v Stevens*, 498 Mich 162, 171; 869 NW2d 233 (2015). A breach of the veil of impartiality presents a fact-specific inquiry, and this Court examines the "cumulative effect" of any errors. *Id.* at 171-172. A single instance of misconduct generally does not create an appearance that the trial judge is biased, unless the instance is "so egregious that it pierces the veil of impartiality." *Id.* at 171. When evaluating the totality of the circumstances, we consider a variety of factors that include the nature of the judicial conduct, the tone and demeanor of the trial judge, the extent of the judicial

---

[1] Defendant's Moorish identity card also states that "I AM A CITIZEN OF THE U.S.A." Although defendant's presentation of the Moorish documents indicate that the Grand Sheik has the "power to make law," he does not present those laws and does not address the Grand Sheik's position regarding laws governing citizens and residents of the U.S.A.

[2] According to the only testimony offered at trial, defendant hesitated to leave the vehicle when asked by the police. Additionally, when the officers observed the bulge in defendant's pocket, he did not disclose the gun. Rather, Officer Olivito testified that defendant indicated it was a flashlight. Curiously, defendant did not immediately rely on his Moor membership and constitutional law, but sought to hide the gun on his person.

[3] Appellate counsel contends that defendant suffered from a mental illness by relying on a statement made by his mother to the probation office. However, an affidavit or other documentary evidence from his mother or other medical professional was not submitted with the brief. Defendant filed a Standard Four Brief, but did not raise an issue of mental incompetence impacting his waiver of the right to counsel.

conduct in light of the duration and complexity of the trial and the issues raised, the direction of the conduct at one side more than the other, and the presentation of curative instructions. *Id.* at 172.

Defendant contends that the trial judge pierced the veil of judicial impartiality by misrepresenting to the jury that defendant believed that the "process was treasonous" when defendant accused the trial court of being a "terrorist treasonous person." Further, defendant contends that the trial court's commentary constituted improper testimony. Although we question the necessity and extent of the explanation offered by the trial court to the jury, under the totality of the circumstances, we do not conclude that defendant was deprived of a fair trial.

First, with regard to the claim of the judge's mischaracterization of treason as applying to the entire court process as opposed to only the trial judge, we note that defendant had challenged jurisdiction of the court from the beginning. He claimed that his status as a Moor precluded the assumption of personal jurisdiction and that dismissal was warranted. He repeatedly raised this same claim at each hearing and filed documentation pertaining to Moors. Further, defendant submitted a notice statement that demanded his release and payment of millions of dollars. It appears that the trial court did not deliberately misrepresent defendant's view of the extent of the treason and its application, but rather, attempted to explain defendant's position in view of its expressions in documentation filed with the court and at multiple court hearings.

We also note that this trial lasted a single day and involved one charge of CCW. Further, the trial court's admonishments were precipitated by defendant's repeated failure to follow instructions. Although defendant agreed to follow the court rules and procedures, agreed to not disrupt the proceedings, and agreed that the trial court instructed on the law, defendant ignored the trial court's direction and continually raised a claim pertaining to the Second Amendment. Additionally, defendant admitted evidence that the driver of the vehicle also presented a sovereign citizens card. Furthermore, the trial judge instructed the jury that "[n]othing I say is meant to reflect my own opinions about the case," that the jurors were the sole decisionmakers, and that the judge's rulings on the evidence also did not reflect his opinions about the facts of the case.

Finally, the trial court's questionable instruction to the jury came after the parties discussed jury instructions. Specifically, defendant was entitled to M Crim JI 2.20 governing a defendant's self-representation that provides:

> In this case, the defendant, _____, is representing [himself / herself]. This fact should not affect your decision in any way. The defendant has the right to represent [himself / herself], and [he / she] has chosen to exercise that right. [A lawyer, _____, is present if the defendant wishes to consult (him / her).]

However, the trial court determined it had to remove defendant from representing himself in light of his continual disruptions, disregard of the trial court's instructions, and his apparent attempt to pursue jury nullification by asking the jurors to disregard MCL 750.227 in favor of the Second Amendment. Thus, the trial court's instruction to the jury was seemingly designed to explain the change in representation, defendant's decision not to testify, and the appropriate law to apply. Although the trial court may have exceeded the bounds of what was necessary to explain

defendant's removal, the short duration of the trial, the curative instructions presented to the jury, and the need to clarify the exchange between defendant and the court in light of the rules demonstrate that defendant was not deprived of a fair trial.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next submits that trial counsel was ineffective for failing to object to the trial court's commentary and its conduct over the trial that pierced the veil of judicial impartiality. We disagree.

Although defendant initially represented himself, the trial court ordered defendant removed from the courtroom. Accordingly, standby counsel took over the questioning of witnesses, the discussion of the applicable jury instructions, and closing argument. Thus, we only address this issue to the extent it raises alleged deficiencies of standby counsel.[4] "Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). This Court reviews a trial court's factual findings for clear error and its conclusions of law de novo. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). When no *Ginther*[5] hearing is held in the trial court, appellate review is limited to mistakes apparent on the record. *Id*.

"Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *People v Schrauben*, 314 Mich App 181, 189-190; 886 NW2d 173 (2016). To obtain a new trial premised on ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). It is presumed that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "[D]ecisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). The burden of establishing the factual predicate for a claim of ineffective assistance is on the defendant. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

After defendant was removed from the courtroom, an inquiry had to occur with regard to his exercise of his right to present a defense and testify. However, when defendant was brought into the courtroom, he explained his dissatisfaction with the court proceedings and his intent to grieve the trial judge and his counsel. The litigants then had a discussion with the court regarding

---

[4] "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.' " *People v Kevorkian*, 248 Mich App 373, 419; 639 NW2d 291 (2001).

[5] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

the jury instructions, and the impact of defendant's removal on M Crim JI 2.20. Although the trial court's instructions exceeded the elimination of M Crim JI 2.20 in light of defendant's removal, defense counsel did not object. However, we will not second-guess strategic decisions by counsel. In light of the short duration of the trial and the curative instructions to the jury that the case must be decided on the evidence and that the court's rulings and opinions should have no bearing on the trier of fact, counsel's decision may have been strategic to avoid highlighting the court's comments before the jury. Under the circumstances, defendant did not meet his burden of establishing ineffective assistance of counsel.

## V. SENTENCE

Defendant contends that he is entitled to resentencing because the court misapplied the law and application of clearly erroneous fact finding resulted in a disproportionate and unreasonable sentence. We disagree.

The trial court's factual determinations addressing the sentencing guidelines are reviewed for clear error and must be supported by a preponderance of the evidence, and the facts as applied to the law are reviewed de novo. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness, and there is no requirement that the sentencing court articulate a substantial and compelling reason for that departure. *People v Lockridge*, 498 Mich 358, 365-365, 392; 870 NW2d 502 (2015). The legislative sentencing guidelines are advisory, and the appropriate inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 459; 902 NW2d 327 (2017). On appeal, the reasonableness of a sentence is reviewed for an abuse of discretion. *Id*. at 471. To determine whether a departure sentence is more proportionate than a sentence within the guidelines range, the trial court should consider whether the guidelines accurately reflect the seriousness of the crime, factors not considered by the guidelines, and factors considered by the guidelines, but given inadequate weight. *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017). To facilitate appellate review, the trial court must justify the sentence imposed with an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been. *Id*.

Although defendant contends that the trial court misapplied the law regarding proportionality in light of the two-thirds rule of *People v Tanner*, 387 Mich 683, 690; 199 NW2d 202 (1972), the trial court did not express that proportionality was satisfied by compliance with the *Tanner* decision. Defendant's contention is without merit. Furthermore, we cannot conclude that the trial court's sentence constituted an abuse of discretion. The trial court considered defendant's position that he was not bound by state law and reviewed the documentation submitted by defendant underlying his belief system. Contrary to appellate counsel's position, there was no documentary evidence offered to support any mental illness and defendant expressly denied any such condition. In sentencing, an abuse of discretion did not occur.

## VI. STANDARD FOUR BRIEF

Defendant seemingly contends that the trial court lacked jurisdiction in light of his membership in the "Moorish Science Temple of America." However, the trial court, as a court of

general jurisdiction, had jurisdiction over this felony action. *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011). Further, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence admitted at trial to support the CCW conviction, and defendant's challenge to the evidence admitted at trial and his contention that his girlfriend owned the firearm do not negate that evidence. *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). Defendant did not identify any issue entitling him to appellate relief.

Affirmed.

/s/ Jane E. Markey
/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel